449 So.2d 12 (1984)
Cathy T. WALKER
v.
Dudley N. GRANTHAM, et al.
No. 83 CA 0308.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Rehearing Denied April 3, 1984.
John W. Degravelles, Baton Rouge, for plaintiff-appellant Cathy T. Walker.
*13 John Swanner, Baton Rouge, for defendant-appellee Clark Equipment Co.
Vincent P. Fornias, Baton Rouge, for defendant-appellee Dudley N. Grantham, Walt Bradley, Jake Jacobs and Georgia Pacific Corp.
Before PONDER, WATKINS and CARTER, JJ.
PONDER, Judge.
Plaintiff appealed the trial court judgment dismissing on a motion for summary judgment her suit against the employer and co-employees of her deceased husband.
The sole issue on appeal is the "intentional act" exemption to the immunity of the employer and co-employees in tort.
We affirm.
Plaintiff filed suit for wrongful death as a result of her husband being killed while working within the course and scope of his employment with Georgia Pacific. The accident occurred when a "Model 632 Bobcat skid-steer loader", which the decedent was operating, tipped over and crushed him.
Plaintiff sued Georgia Pacific and the following Georgia Pacific employees: Dudley Grantham, plant manager; Walter Bradley, safety director; and Loris Jacobs, pulp machine superintendent.[1] She alleged that defendants committed negligent and/or intentional acts resulting in her husband's accident and death, basing her cause of action on the "intentional act" exception to the tort immunity of employers and co-employees provided by La.R.S. 23:1032.[2]
Defendants filed a motion for summary judgment which was granted. Plaintiff appealed.
Plaintiff, in an amending petition, stated:
"6.
"Plaintiff alleges upon information and belief that the acts and omissions alleged in the above paragraph, subparagraph (A), were `intentional' within the meaning of La.R.S. 23:1032, as amended by Acts 1976, No. 147, § 1, in that while these defendants might not have desired the consequences of their acts and omissions, they nonetheless knew that the consequences were substantially certain to follow.
"6A.
"In furtherance of the foregoing allegation, petitioner alleges that the bases therefor include the following matters of factual knowledge on the part of the defendants which existed at the time that they ordered and/or allowed plaintiff to do work with the Model 632 Bobcat previously described:
"A. They knew that the decedent was a young man with practically no work experience at all, and no experience of whatever kind with heavy equipment and with a Model 632 Bobcat in particular;

*14 "B. They knew that the decedent had been hired less than one month at the time he was assigned the job of operating the Model 632 Bobcat on the date that he was killed;
"C. They knew that he was given little or no safety training in the use of the Model 632 Bobcat or specifically in the consequences of operating the Model 632 Bobcat without a rollover protection system (hereinafter referred to as `ROPS'), which refers to the bars and cage around and on top of the driver of the Model 632 Bobcat or similar equipment designed to protect the driver in the event the piece of equipment tips over;
"D. They knew that the physical area where the Model 632 Bobcat was to be used was such that it was physically impossible to operate the Model 632 Bobcat or similar equipment with the ROPS;
"E. They knew that operating the Model 632 Bobcat involved in this accident without the ROPS would cause serious injury and/or death to the operator of this equipment or that this was substantially certain to happen;
"F. They knew that the Model 632 Bobcat which was involved in this accident had been rented to replace a similar piece of equipment which had broken and was in need of repair;
"G. They knew that the similar piece of equipment which had been replaced by the Model 632 Bobcat being operated by the decedent at the time he was killed had been specially modified so that its arms could not be raised over a certain level, making the possibility of its tipping over practically nil, and because of that safety modification, the ROPS had been removed;
"H. They knew prior to the renting of the Model 632 Bobcat involved in this accident that whatever piece of equipment was rented to replace the front end or skid steer loader which was in need of repair would have to have the ROPS removed in order to allow it to work within the physical confines of the area assigned for it (which area was where the decedent was ultimately killed);
"I. They knew that the Model 632 Bobcat rented to replace the similar piece of equipment which was being repaired was not modified so as to prevent its arms from extending to such height that, when loaded, the Bobcat was certainly or substantially certain to tip over and cause serious injury and/or death;
"J. They knew that the Model 632 Bobcat would be used to lift pulp or broke above that safe height, thereby necessitating the extension of its arms above that safe height, thereby making its tipover certain or substantially certain to occur, and serious injury and/or death certain or substantially certain to follow."
For an employee to recover in tort from his employer or co-employees, the injury must have been caused by an intentional act, in which the tortfeasor consciously desires to bring about the physical result of his act, or has the belief that the result of his act was substantially certain to follow from his conduct. Fallo v. Tuboscope Inspection, et al., 444 So.2d 621 (1984); Bazley v. Tortorich, 397 So.2d 475 (La.1981). The term "substantially certain" may be restated as "virtually sure" or "nearly inevitable". Reagan v. Olinkraft, Inc., 408 So.2d 937 (La.App. 2nd Cir.1981), writ denied, 412 So.2d 1095 (La. 1982).
The decedent had been working with Georgia Pacific for about one month when the accident occurred. While it was common procedure to allow a new employee to work with equipment only after he was adequately trained, no one could state positively that Walker had been so trained. The decedent was using a Model 632 Bobcat which was leased by Georgia Pacific while its Bobcat was being repaired.
Because the owned Bobcat had to be used in a confined area, the cab or rollover protection system had been removed. However, the arms of the owned Bobcat had been modified so that they could not be raised past a certain height, thereby making a tipover virtually impossible.
*15 The rollover protection system had also been removed from the leased Bobcat, which was common practice when a rented Bobcat was to be used in the particular area where the accident occurred, but no modification was made to the arms of the rented Bobcat.
There was conflicting evidence presented as to the general use of the Bobcat. The affidavit of Aristide Treloar, an electrical and instrument maintenance man at Georgia Pacific, stated that both the rented and owned Bobcats were routinely used to reload broken bits of wood (broke) into the repulper, which the decedent was doing at the time of the accident.
The safety man for Georgia Pacific, Walter Bradley, stated that the Bobcat was used only to remove the broke from the floor and place it by the repulper. This was corroborated by Loris R. Jacobs, the pulp machine superintendent. A forklift was then used to load the broke into the repulper. This procedure was used because the modified arms would not extend high enough to reach the repulper. When the unmodified arms of the Bobcat were raised to the height necessary to go over the retaining wall of the repulper with a loaded bucket, a dangerous situation was created.
However, plaintiff must show that defendants were aware that a death was substantially certain to occur. The mere knowledge that a machine is dangerous and therefore that its use creates a high probability that someone will eventually be injured is not sufficient. Maddie v. Plastic Supply & Fabrication, 434 So.2d 158 (La. App. 5th Cir.1983), writ denied, 435 So.2d 445 (La.1983).
Walter Bradley determined that the modified Bobcat was safe in the only use he was aware of, moving the broke next to the repulper. He did not know that another Bobcat had been rented and was in use, nor did he know that it was not modified. We find no knowledge, awareness or inference of an awareness that a death was substantially certain to occur.
Loris Jacobs, the pulp machine superintendent, knew a rented Bobcat was in use at the time of the accident. He stated, however, that he thought the limited arm extension of the modified Bobcat was standard and that he had never personally operated a Bobcat.
Although he may have been negligent in not closely analyzing the differences in the rented and owned Bobcats, in not seeing that the decedent was more thoroughly trained in the machine's operation and in not making sure the rented Bobcat was modified, we find no evidence to support a finding that he was "substantially certain" or "virtually sure" that a death would result.[3] See, Erwin v. Excello Corporation, 387 So.2d 1288 (La.App. 1st Cir.1980), writ denied, 396 So.2d 1242, 397 So.2d 1363 (La. 1981).
The plaintiff, in brief, acknowledges that there is no evidence to support a finding that Dudley Grantham is liable.
There is insufficient evidence of an intentional act or a belief that a death was substantially certain to result from an act on the part of Georgia-Pacific either through the named defendants or others. We find no error in the dismissal of the suit against Georgia-Pacific.
We need not consider defendants' arguments concerning the exception of no cause of action.
For these reasons, the judgment is affirmed with costs assessed to the plaintiff.
AFFIRMED.
NOTES
[1] Also made defendant is Clark Equipment Company who is not a party to this appeal.
[2] La.R.S. 23:1032 provides:

"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section."
[3] We note that the depositions of the defendants indicate that they did not entertain a desire to bring about the result and were not substantially certain that result would follow.