SEXTON, Judge.
The plaintiff, Mildred Galvin, appeals the judgment of the trial court granting the motion for summary judgment filed by defendants, P.E. Barnes & Sons, Ltd. and Lumber Mutual Insurance Company. We affirm.
At the time of his death, James Edward Galvin, the plaintiff’s son, was employed as a general laborer by the P.E. Barnes Sawmill in Tallulah, Louisiana. On the ground floor of the sawmill was a network of conveyors which carried waste lumber to the fuel house. Galvin’s job was to operate the conveyors. This job consisted of operating the start/stop buttons that turned the conveyors on and off and of keeping the conveyors running smoothly. No one else was to operate the buttons unless Gal-vin asked for help. Robert Gathrite, a fellow employee, stated that on past occasions he had seen Robert Adcock, the plant manager, and Emmett Jones, one of Gal-vin’s supervisors, operate the conveyors.
The conveyor involved in this suit was approximately 130-140 feet long. It consisted of a chain, an electric motor which powered it, the drum over which the chain operated, and the drive sprocket which pulled the chain. The top part of the chain was approximately six feet above the ground; the bottom part of the chain, or the return chain, was at ground level. Each part of the chain ran in a trough, and the waste lumber was carried by the top part of the chain.
On the day of the accident, the top trough became overloaded with waste lumber when another conveyor downstream was stopped for repairs. Adcock told Gal-vin and Gathrite to climb to the top trough of the conveyor and remove the lumber. It is clear that the conveyor was on while they were removing the lumber.
Gathrite climbed to the top of the conveyor and began throwing the lumber off the conveyor. He did not look to see where Galvin was. After a few minutes, Gathrite heard other employees yelling that Galvin was caught in the conveyor. Galvin’s body was found in the bottom trough under the tail drum.
Galvin had no legal dependents other than the plaintiff. In accordance with LSA-R.S. 23:1231, the plaintiff received $20,000.00 in worker’s compensation benefits from P.E. Barnes and its worker’s compensation insurer and signed a release stating that her son had died in the course and scope of his employment. She then filed suit against P.E. Barnes, its liability insurer (Lumber Mutual), and the manufacturer of the conveyor (Chicago Mill and Lumber Company). The plaintiff alleged that while Galvin was removing the lumber, his immediate supervisor, without warning and in clear violation of industry safety standards, started the machine running again, even though he knew that Galvin was trapped. The plaintiff alleged that P.E. Barnes, through the supervisor, either consciously desired the physical result of its act or knew that the consequence of its act — the death of Galvin — was substantially certain to follow, and that Galvin was thus killed as a result of the intentional acts of P.E. Barnes.
P.E. Barnes and Lumber Mutual filed a motion for summary judgment based on the contention that the decedent’s death was not the result of an intentional act and *741 that the plaintiff's sole remedy was in worker’s compensation. Chicago Mill also filed a motion for summary judgment, in addition to an exception of prescription and an exception of no cause of action; however, these pleadings are not at issue on this appeal.
Submitted for the trial court’s consideration were the petition, the answer, depositions of Galvin's co-workers, defendants’ answers to the plaintiff’s interrogatories, affidavits of Adcock and Gathrite, and the release signed by the plaintiff. The trial court granted the motion filed by P.E. Barnes and Lumber Mutual and dismissed the plaintiff’s suit against them.
LSA-R.S. 23:1032 provides that an employee’s exclusive remedy for an injury sustained on the job is worker’s compensation except when the injury is the result of an intentional act. An intentional act is one in which the defendant “either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did.” Bazley v. Tortorick, 397 So.2d 475, 482 (La.1981).
It is clear that the record presented to us for review of this summary judgment contains the depositions or affidavits of all persons who were present or had pertinent knowledge of this incident. Emmett Jones, one of Galvin’s supervisors, stated that he did not touch the start/stop button before the body was discovered and that he would not have pushed the button until Adcock told him it was all right to do so.[1] Adcock also denied operating the buttons on the conveyor that day. Each person deposed stated that he did not know of anyone who wanted to harm Galvin or who had a reason to harm him.
Importantly, there is nothing in any of the depositions of all of those who were present to render the slightest suggestion that any person did an act substantially believing that the plaintiff’s injuries were likely to result from that act. Although the conveyor was not turned off while Gathrite and Galvin were removing the lumber, the record reveals that this procedure is standard. This procedure allows the employee clearing the conveyor to know when the jam has been cleared as the conveyor will begin moving again.[2] Robert South, Sr., a laborer at the mill, testified that he had unclogged the conveyor on numerous occasions and had cleared the conveyor while it was was running.
The record reveals that no one knew how Galvin became entangled in the conveyor. Galvin’s body was found in the bottom trough under the tail drum. Both Gathrite and Adcock stated that Galvin was instructed to go to the top trough. Gathrite stated that Galvin went to the bottom trough instead. Bobby Black, the mill foreman, stated that considering where the body was found, Galvin could not have been on the top of the chain when it began running again.
LSA-C.C.P. Art. 966 provides that a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. The motion for summary judgment is a proper procedural tool to penetrate the plaintiff’s allegations that the injuries resulted from an intentional tort. Fallo v. Tuboscope Inspection, 444 So.2d 621 (La.1984); Gallant v. Transcontinental Drilling Company, 471 So.2d 858 (La.App. 2d Cir.1985).
When a motion for summary judgment has been filed and supported by evidence, *742 the adverse party may not rest on the mere allegations of his pleadings; by affidavits or otherwise, he must set forth specific facts showing that there is a genuine issue for trial. Simoneaux v. E.I. du Pont de Nemours and Company, 483 So.2d 908 (La.1986); Taylor v. Metropolitan Erection Company, 496 So.2d 1184 (La.App. 5th Cir.1986), writ denied 497 So.2d 1388 (La.1986).
In conclusion, the record before us shows that the knowledge of every party involved in the incident was presented by deposition or affidavit and formed the record upon which the trial court granted summary judgment. The plaintiff filed no affidavits or depositions contradicting the material filed by the defendants and has made no other filing indicating in any way that anyone desired to or expected to injure the plaintiff. Thus, there is nothing in the record to substantiate that anyone intended to injure the plaintiff or that anyone did an act substantially believing that injury to the plaintiff was certain to follow. Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.

. On oral argument, the plaintiffs attorney was adamant that Emmett Jones was the person who committed an act with the intent to injure Galvin. However, plaintiffs petition alleged that the supervisor who had ordered Galvin to remove the boards from the conveyor was the party who restarted the machine and thus had an intent to injure Galvin. The person who gave this order was Adcock. We do not attempt to resolve any potential procedural defect regarding this change in plaintiffs contention.

. Adcock stated in his deposition that he saw Galvin push the start/stop button before he went to the conveyor. Apparently, this action turned the conveyor on, although this point is not entirely clear. Since it is standard procedure to clear the conveyor while it is turned on, a resolution of whether Galvin’s actions turned the jammed machine on or off is not necessary.