581 So.2d 300 (1991)
Abe Lee KING
v.
SCHUYLKILL METALS CORPORATION, et al.
No. CA 90 0182.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
Writ Denied September 20, 1991.
*301 W. Michael Stemmans, Baton Rouge, for plaintiff-appellant Abe Lee King.
Charles A. Schutte, Jr., Baton Rouge, for intervenor-appellee Liberty Mut. Ins. Co.
Keith Giardina, Baton Rouge, for defendant-appellee Schuylkill Metals Corp.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
Plaintiff, Abe Lee King, appeals from a judgment dismissing his personal injury suit against defendant, Schuylkill Metals Corporation, on a motion for summary judgment. The issue presented on appeal is whether plaintiff's injury resulted from an intentional act within the meaning of the exception provided by La.R.S. 23:1032 B to the general rule that an employee's exclusive remedy against his employer for a work injury is worker's compensation.
While in the course and scope of his employment with Schuylkill on April 5, 1988, plaintiff was injured when his left hand was caught in the blades of a screw conveyor he was in the process of cleaning. Despite clear warnings on the sides of the screw conveyor that the power should be locked out before removal of the safety cover over the blades, plaintiff was cleaning the conveyor while it was in operation, with the safety cover removed, as he had been instructed by his supervisor.
Plaintiff subsequently filed this tort suit against Schuylkill, alleging Schuylkill personnel ordered him to clean the screw conveyor under such conditions that they knew or should have known that injury was substantially certain to follow.[1] An intervention was filed in this matter by Liberty Mutual Insurance Company, Schuylkill workers' compensation carrier, for reimbursement of all benefits and medical expenses paid to plaintiff as a result of his *302 injury. After answering plaintiff's suit, Schuylkill filed a motion for summary judgment on the ground that plaintiff's exclusive remedy was workers' compensation, since his injury did not result from an intentional act. After a hearing, the trial court granted this motion for summary judgment, dismissing plaintiff's suit against Schuylkill. Plaintiff has now appealed, alleging the trial court erred in concluding there were no disputed issues of material fact as to whether his injury resulted from an intentional act and in sustaining Schuylkill's objection to portions of his opposing affidavits.
Generally, worker's compensation is the exclusive remedy of an employee injured in the course and scope of his employment. La.R.S. 23:1032. However, La. R.S. 23:1032 B provides an exception to this tort immunity when the employee's injury is the result of an intentional act. An act is considered intentional whenever the defendant either consciously desired to bring about the physical results of his act or believed they were substantially certain to follow from his conduct. Bazley v. Tortorich, 397 So.2d 475 (La.1981); Kent v. Jomac Products, Inc., 542 So.2d 99 (La.App. 1st Cir.1989). To meet the criteria of "substantial certainty" requires more than a reasonable probability that an injury will occur; this term has been interpreted as being equivalent to "inevitable", "virtually sure" and "incapable of failing". Kent v. Jomac Products, Inc., supra; Hood v. South Louisiana Medical Center, 517 So.2d 469 (La.App. 1st Cir.1987); Walker v. Grantham, 449 So.2d 12 (La.App. 1st Cir.), writ denied, 450 So.2d 966 (La.1984). The mere knowledge of an employer that a machine is dangerous and that its use, therefore, creates a higher probability that someone will eventually be injured is not sufficient to meet the "substantial certainty" requirement. Walker, supra; Holliday v. B.E. & K. Const. Co., 563 So.2d 1333 (La.App. 3d Cir.1990). Further, even where a defendant's conduct is grossly negligent, this fact alone will not allow the imputation of intent. Hood, supra. Finally, in determining whether an act was intentional within the meaning of La.R.S. 23:1032 B, a court should be mindful that this exception has been given a narrow interpretation, consistent with the policy rationale of the workers' compensation act and the legislative history of this exception. Reeder v. Laks Corp., 555 So.2d 7 (La.App. 1st Cir.1989), writs denied, 559 So.2d 142 (1990).
In brief, plaintiff contends summary judgment is not the proper procedure in which to determine whether an employee's injury resulted from an intentional act. This argument is without merit since the jurisprudence of this state clearly holds that summary judgment is a proper procedural method to consider an employee's allegation that his injury resulted from an intentional act of his employer. Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La. 1984); Hood, supra; Chaisson v. Henning, 525 So.2d 553 (La.App. 3d Cir.) writ denied, 531 So.2d 277 (1988); Galvin v. P.E. Barnes & Sons, Ltd., 521 So.2d 739 (La. App. 2d Cir.1988). Where the plaintiff has alleged his injury resulted from an intentional act of his employer, if the facts set forth in the pleadings, depositions, answers to interrogatories, and affidavits, if any, show there is no genuine issue as to the employer's lack of intent, notwithstanding conclusory allegations to the contrary, the employer is entitled to judgment dismissing the plaintiff's suit. La.C.C.P. art. 966; Hood, supra.
In this case, plaintiff does not claim that defendant consciously intended to injure him. Thus, our inquiry is limited to the second prong of the Bazley test: whether Schuylkill believed plaintiff's injury was substantially certain to follow from requiring him to clean the screw conveyor while it was running without its safety cover.
In support of its motion for summary judgment, defendant filed the affidavits of Calvin Roberts and Dalton Mann, two of its employees. Mr. Roberts deposed that on the date of the accident he instructed plaintiff to clean the screw auger (conveyor) with a long-handled, flat iron tool routinely used to scrape material from the sides of the screw auger trough, as plaintiff had *303 done without incident on a number of previous occasions. He further deposed that in his fifteen years of employment with Schuylkill, Schuykill's screw augers had been cleaned in this manner, while running, four to five times per year and that no other employee ever had been injured while employing this procedure. Finally, he indicated that in ordering plaintiff to clean the screw auger he did not intend any harm to plaintiff and had no belief that plaintiff would be injured in completing this task. In his affidavit, Mr. Mann declared that the screw auger which plaintiff was cleaning at the time of the injury had been cleaned in the same manner plaintiff was then cleaning it approximately four to five times a year since Mann began working for Schuylkill in 1972, and that no employee previously had been injured while cleaning any of the screw augers at Schuylkill.
In opposition to Schuylkill's motion, plaintiff filed his own affidavit, the affidavit of Gary Talley, a former co-worker, and the affidavit of Michael A. Weigand, an industrial safety expert. Plaintiff's affidavit described his accident, including the fact that he was ordered to clean the screw conveyor while it was running with its safety cover removed. Mr. Talley stated in his affidavit that he had warned Schuylkill previous to plaintiff's injury that operation of the screw conveyors without their safety covers was illegal and dangerous, and that someone would be hurt if Schuylkill continued to operate them in this manner. Mr. Talley also declared that Schuylkill had knowledge of an incident which occurred at Schuylkill approximately six months before plaintiff's injury, in which another employee nearly lost an appendage in a screw conveyor being operated without a safety cover. Mr. Weigand's affidavit expressed an opinion that Schuylkill knew plaintiff's injury was substantially certain to happen under the circumstances.
It is beyond dispute that the operation of the screw conveyor in question with its safety cover removed was dangerous and created a risk of injury. The warning labels on the sides of the conveyor clearly warned of this very danger. However, even the knowledge of a high degree of probability that an injury will occur is insufficient to establish that an employer was substantially certain that an injury would occur, so as to impute intent to him. Jacobsen v. Southeast Distributors, Inc., 413 So.2d 995 (La.App. 4th Cir.), writ denied, 415 So.2d 953 (1982).
In fact, we find no evidence or allegations herein which would support a finding that Schuylkill was substantially certain that plaintiff would be injured as a result of being ordered to clean the screw conveyor in the manner that he did. A distinction must be made between probability and substantial certainty. Thus, although there may have been a high probability that plaintiff would be injured, we do not believe such an injury was "inevitable", "virtually sure" or "incapable of failing", so as to lead to a conclusion that plaintiff's injury was a substantial certainty. This conclusion is supported by the fact that other Schuylkill employees cleaned similar screw conveyors in this manner for years without injury, and that plaintiff himself had previously cleaned the same conveyor without incident on prior occasions. This fact illustrates that, while there may have been a strong probability of injury, there was not such a substantial certainty that an injury would occur as to impute intent to Schuylkill. In effect, all plaintiff's allegations amount to is that Schuylkill was grossly negligent. Irregardless of its probable negligence, we conclude there is no question that Schuylkill was not guilty of an intentional act within the contemplation of La.R.S. 23:1032 B.
Plaintiff's contention that several issues of material fact exist which preclude summary judgment is without merit. These alleged issues of disputed fact are: whether the screw conveyor involved had routinely been cleaned in the same manner four to five times a year for over fifteen years as stated by Mr. Mann in his affidavit, since Schuylkill admitted in its answers to plaintiff's interrogatories that this particular machine had only been purchased only in 1987; whether the screw conveyor was being routinely cleaned at the time of plaintiff's *304 injury or whether it was undergoing renovations; whether prior complaints and warnings were made to Schuylkill concerning the danger of cleaning operating screw conveyors with the safety cover removed; and, whether Schuylkill had knowledge of a prior incident of a near injury to an employee involving the operation of a screw conveyor in this manner.
We do not believe that any of the disputed facts raised by plaintiff are such as would preclude summary judgment in this case. Even if the particular machine involved had been cleaned in the manner employed by plaintiff only a few times, rather than four to five times a year for fifteen years, this fact would not alter our conclusion that Schuylkill did not believe injury to plaintiff was substantially certain to follow as a result of his instructions to clean the conveyor. With respect to whether the conveyor was undergoing renovations at the pertinent time, we believe this question is immaterial to the issue of intent. Finally, our conclusion also would not be altered regardless of whether Schuylkill previously had been warned of the danger of the cleaning procedure it employed and/or had knowledge of a prior near injury. See Maddie v. Plastic Supply & Fabrication, Inc., 434 So.2d 158 (La. App. 5th Cir.), writ denied, 435 So.2d 445 (1983) (no intentional act found despite employer's knowledge of prior injuries); Reagan v. Olinkraft, Inc., 408 So.2d 937 (La. App. 2d Cir.1981), writ denied, 412 So.2d 1095 (1982) (employee's death was not the result of an intentional act even if plaintiff proved allegations that employer knew of prior accidents involving the machinery which killed decedent).
Finally, plaintiff maintains the trial court erred in sustaining defendant's objection to those portions of the affidavit of plaintiff's safety expert, Michael Weigand, which expressed opinions rather than facts. In sustaining this objection, the trial court stated, "I don't think the opinions in affidavits are acceptable." We find no error in this ruling.
La.C.C.P. art. 967 requires that affidavits filed in connection with a motion for summary judgment must be based on personal knowledge. An opinion of an expert, which is based solely on his special training and experience, is not based on personal knowledge as contemplated by article 967. Brock v. Newman, 543 So.2d 84 (La.App. 1st Cir.), writ denied, 548 So.2d 1251 (1989); McCoy v. Physicians & Surgeons Hosp., 452 So.2d 308 (La.App. 2d Cir.), writ denied, 457 So.2d 1194 (1984). As the court explained in McCoy:
A statement of opinion is not sufficiently certain or probative to justify a conclusion that there is no issue of fact which should be determined by a trial on the merits. Expert opinion statements or testimony requires evaluation by the trier of fact as to probative value. 452 So.2d at 310.
Thus, the trial court was correct in refusing to consider the portions of Mr. Weigand's affidavit which merely expressed his opinion.
For the reasons assigned, we affirm the summary judgment granted by the trial court dismissing plaintiff's suit against Schuylkill. All costs of this appeal are to be borne by plaintiff.
AFFIRMED.
NOTES
[1] KWS Manufacturing Company, the manufacturer of the screw conveyor, was also named as a defendant in this suit. KWS is not a party in the present appeal.