607 So.2d 1044 (1992)
Peter Wayne FUSELIER, Plaintiff-Appellee,
v.
AMOCO PRODUCTION COMPANY, et al., Defendants-Appellants,
Meier Contractors, Inc. and Aetna Casualty and Surety Company, Third Party Defendants.
No. 91-658.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
*1046 Gilber W. Aucoin, Ville Platte, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John G. Charrier, John J. Veters, New Orleans, for defendant-appellant Amoco.
Roy, Carmouche, Bivins, Judice, Henke & Breaud, Patrick M. Wartelle, Lafayette, for defendant-appellee Aetna.
Raggio, Cappel, Chozen & Berniard, Keith Prudhomme, Lake Charles, for defendant-appellee Meier.
Before DOMENGEAUX, C.J., LABORDE, J., and PATIN[*], J. Pro Tem.
DOMENGEAUX, Chief Judge.
Peter Wayne Fuselier filed suit against Amoco Production Company and two Amoco employees after he was injured in an explosion which occurred while he was operating a bushhog at an Amoco production site. Amoco then filed a third party demand for indemnification, which this court later dismissed, against Meier Contractors, Inc., the company which hired Fuselier to perform vegetation control services at various Amoco locations. See Fuselier v. Amoco Production Co., 546 So.2d 306 (La. App. 3d Cir.1989), writ denied, 551 So.2d 630 (La.1989), our docket number 88-261. On remand, after trial on the merits, the district judge awarded Fuselier $210,000, subject to a 30% reduction for the percentage of fault assessed to him. Both Fuselier and Amoco now appeal that trial court judgment.

FACTS
Meier Contractors, Inc. had a long standing contract to supply Amoco with general laborers, including roustabouts, pumpers, pipe cutters, etc. Meier contracted with Fuselier to perform vegetation control services for Amoco as well as several other oil and gas production companies. Fuselier was licensed by the State of Louisiana to purchase and to apply certain pesticides, and his services included chemical spraying, mowing, replanting, and erosion protection. None of Amoco's payroll employees held such a vegetation control license.
On Monday morning, July 21, 1986, Fuselier was instructed by Jackie Serrette, an Amoco employee at the Pine Prairie production facility, to clear away overbrush which had grown around a pipeline that ran above the ground between a tank battery and a heater treater. The preceding Friday evening, Fuselier had been working in the same area when he observed that the pipeline had been disconnected. On Friday, he rolled over the "dead" pipeline with his tractor several times in full view of the production crew working at that time. On Monday, however, Serrette did not instruct Fuselier as to the status of the line that day.
Although the pipeline ran above the ground, it was partially obscured by weeds and sapling trees which had grown to a diameter of approximately four inches. On Monday morning, Fuselier began mowing parallel to the pipeline with his tractor and bushhog. At approximately three-fourths of the length of the pipe, his tractor veered, causing the bushhog to strike and rupture the pipeline. Liquid began spewing from the pipe, covering Fuselier and the tractor. When Fuselier heard his tractor engine begin to race, he tried to jump away, but he was injured in the ensuing explosion. He sustained second and third degree burns on his left leg and arm. He was hospitalized for 24 days, and underwent eight painful debridement procedures and a skin graft. Although his burns have reached maximum *1047 improvement, his leg and arm are permanently scarred.

STATUTORY EMPLOYMENT
Amoco argues the trial court erred in ruling that Fuselier was not its statutory employee under La.R.S. 23:1061 because at the time of the accident Fuselier was performing only routine maintenance which was a part of Amoco's trade, business or occupation.
In Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), the Supreme Court set forth the test to be applied in determining whether a principal is to be considered the statutory employer of a contractor's employee. Although the legislature amended § 1061 to overrule the Berry decision, that amendment is not given retroactive application. See Fountain v. CLECO, 578 So.2d 236 (La.App. 3d Cir.1991), writ denied, 581 So.2d 707 (La.1991).
Berry requires the court to conduct a three-tiered analysis in applying § 1061. First, the court must determine whether the contract work is specialized or nonspecialized. If the contract work is specialized per se, then as a matter of law it is not part of the principal's trade, business or occupation. If the contract work is not specialized, then the second level of the Berry test involves a comparison of the contract work with the principal's trade, business or occupation. Relevant questions at this stage include: (1) Is the contract work routine and customary; and (2) Does the principal have the equipment and/or manpower capable of performing the contract work. Finally, the court must determine if the principal is engaged in the work at the time of the accident.
In deciding whether the contract work is specialized or nonspecialized, the court should consider the entire scope of the contract work; the specific task to which the employee is assigned should not be determinative of his coverage under the act. Berry, p. 936.
At the time of the accident, Fuselier was mowing grass and rolling over small trees with a bushhog and a tractor. If these were the only services Fuselier provided, we would have little trouble concluding that the contract work encompassed only the type of routine maintenance which is generally held to be within the principal's trade, business or occupation. However, Berry mandates that we examine the entire scope of the contract work, not just specific task being performed at the time of the accident. Fuselier testified without contradiction that in addition to mowing, he performed chemical spraying, replanting and re-establishment of production locations at several Amoco facilities. Fuselier was licensed by the Louisiana Department of Agriculture as a vegetation control specialist, and his equipment had to pass inspection each year.
The trial court considered Fuselier's contract work to be specialized per se after finding that Amoco did not have the qualified personnel or equipment to perform this type of work. Paul Mire, an Amoco foreman, testified that Amoco did not have any payroll employees licensed in vegetation control. Although Amoco owned a tractor and bushhog and some employees did routine mowing, Mire testified that Amoco always used independent contractors for its vegetation control work. Mire attempted to show that industry practice was to use payroll employees for this type of work; however, on cross-examination he admitted his testimony was not based on personal knowledge because he has only worked for Amoco. The plaintiff, on the other hand, testified that he was hired as an independent contractor by at least four other oil and gas companies.
The question of whether or not a personal injury defendant is a statutory employer of the plaintiff is a factual issue. Lewis v. Exxon, 441 So.2d 192 (La.1983). The trial court's finding of fact on this issue should be accorded great weight and should not be disturbed unless clearly erroneous. After reviewing the record, we find no error in the trial court's conclusion that Amoco was not Fuselier's statutory employer.
Amoco next argues that under the "law of the case" doctrine, the statutory employment *1048 issue is foreclosed because this court has already ruled in its favor on that question in our earlier opinion, Fuselier v. Amoco Production Co., supra, our docket number 88-261. We disagree.
The "law of the case" rule is merely a court practice usually applied at the appellate level in regard to parties who have had the identical issue presented and decided previously by that appellate court in an earlier appellate proceeding in the same case. Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984). The principle is applicable to and determines the effect given prior rulings disposing of identical issues earlier in the same proceeding involving the same parties. Miller v. East Ascension Telephone Co., Inc., 331 So.2d 182 (La.App. 1st Cir.1976).
The earlier Fuselier opinion presented the question of whether the indemnification provision in the master service contract between Amoco and Meier was unenforceable under La.R.S. 9:2780, which invalidates certain indemnification agreements in contracts related to "the exploration and development, production and transportation of oil, gas, or water." The issue before us today is whether the contract work is within Amoco's trade, business or occupation so that Fuselier is to be considered Amoco's statutory employee under La.R.S. 23:1061. The issues are separate and distinct; they involve different rules of statutory construction, and they concern the rights and obligations of different parties. The law of the case doctrine is not applicable in this situation.

LIABILITY
The trial court found Amoco at fault in this accident under theories of strict liability and negligence; however, the court also assessed 30% comparative fault to Fuselier after concluding the plaintiff should have acted with a greater regard for his own safety. Both Amoco and Fuselier appeal, each contending the other is solely responsible for the accident.
The pipeline in question was a circulation line that carried highly flammable substances between a tank battery and a heater treater. Although the line ran above the ground, it had become so obscured by brush and small trees that its exact location was not visible in some places. At the time of the accident, the line was disconnected from both the heater treater and the tank battery, but some of its volatile product remained trapped inside.
The trial court found the flowline presented an unreasonable risk of harm solely because it was located above the ground. The court in effect held that in today's mechanized society, all lines containing volatile materials should be placed underground. We are not prepared to make such a sweeping statement at this time. Further, expert testimony in the record does not support a conclusion that this particular line should have been located below the ground. Mr. Michael Frenzel, the plaintiff's safety expert, testified that circulation lines, as opposed to distribution lines, are routinely found above ground. Certainly, a visible, well marked pipeline of a relatively short length would not be considered unreasonably dangerous per se.
However, Mr. Frenzel did conclude this line posed a unique hazard because its path was not entirely visible. The record reveals that over time, heavy vegetation had grown around the line, completely covering it at some points along its path. Frenzel stated the accident could have been prevented if Fuselier had positioned his bushhog further away from the flowline, but in some places Fuselier had to rely on his imaginary projection of where he thought the line was.
Frenzel also explained that Amoco's failure to "bleed" the line of its trapped product upon disconnection added to the hazard. Both Frenzel and Mire, Amoco's representative, agreed that "bleeding" the line could have been accomplished in a matter of seconds.
We agree with the trial court, although for different reasons, that Amoco's pipeline presented an unreasonable risk of harm. The presence of the trapped product in the disconnected, partially obscured pipeline, created a danger to anyone working in the *1049 area, and the conditions creating the danger could have easily been prevented through routine maintenance and simple operating procedures.
Because we find Amoco at fault under the theory of strict liability, we need not discuss the alleged negligence of Amoco's employees.
We further find the record supports the trial court's assessment of some comparative fault to Fuselier. Fuselier admitted he did not treat the line as "live" even though he knew through many years of experience in the oilfield that oil production lines should be treated with respect. Although he claims certain Amoco employees led him to believe the line posed no danger, he admitted he knew that one should never assume a production line is inactive. We find no error in the percentages of fault assigned by the trial court.

QUANTUM
The trial court awarded Fuselier a lump sum of $210,000, subject to a 30% comparative fault reduction. Amoco seeks a reduction of this amount, contending it includes an award for lost wages when the plaintiff failed to present any evidence on this element of damages at trial. Fuselier also appeals, seeking an increase in general damages, an additional award for special damages of $26,588.06, which includes $25,068.06 in stipulated medical expenses and $1,520.00 in other special damages, and exemplary damages under La.C.C. art. 2315.3.
The trial court's explanation of the $210,000 award is admittedly confusing. In written reasons, the court stated it entertained the issue of lost wages, but it declined to make a specific award for such damages. At trial, the court acknowledged that the plaintiff failed to produce any evidence of lost wages, either past or future. We conclude the amount awarded by the trial court does not cover any claim for lost wages, and Amoco's request for a reduction on this basis is denied.
The trial court stated the award included damages for physical and mental suffering, past and future, future medical expenses and any other damages proved at trial. The court did not mention an award for the $26,588.06 in special damages. We find the court erred in not making a specific award for these medical and other expenses incurred by Fuselier. Plaintiff is entitled to an award in this amount, subject to a reduction for comparative fault, over and above his general damages.
We now turn to the question of general damages. Fuselier sustained third degree burns over 18% of his body, with the majority of the burns being concentrated on the posterior of his left leg. He was hospitalized for 24 days during which time he underwent at least eight surgical debridements and a skin graft. Although he reached maximum medical improvement about ten months post accident, his left leg and arm are permanently scarred. Dr. James Blackburn, a psychiatrist, testified that four years after the accident, Fuselier was still suffering from chronic pain syndrome and depression.
Before a court of appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making the award. Coco v. Winston Industries, 341 So.2d 332 (La.1976). We find no such abuse here. Although Fuselier sustained open flame burns, the most severe of burns, they failed to penetrate the skin, leaving the muscle and bone in tact. At the time of trial, Fuselier suffered from chronic pain syndrome and depression, but he presented no evidence of disabling injuries, either physical or mental. Based upon the above, we cannot say the $210,000 in general damages awarded by the trial court is either abusively high or low.
Fuselier also seeks an award for exemplary damages under La.C.C. art. 2315.3, which provides:
In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. As used in this Article, the term hazardous or toxic substances shall not include electricity.
*1050 The jurisprudence interpreting this article has held that the plaintiff must prove the defendant's alleged acts or omissions were accompanied by a "conscious indifference to consequences amounting almost to a willingness that harm to the public safety would follow." Griffin v. Tenneco Oil Co., 531 So.2d 498 (La.App. 4th Cir.1988), writ denied, 534 So.2d 430 (La.1988). In the instant case, Amoco permitted its pipeline to be partially obscured by vegetation overgrowth and it failed to bleed the line of its hazardous product, a procedure that could have been accomplished in only seconds. Although these two acts combined to create the defective condition which resulted in Fuselier's injuries, Fuselier has not shown Amoco acted with wanton or reckless disregard for public safety. Fuselier's claim for exemplary damages under La.C.C. art. 2315.3 is denied.
For the above reasons, the judgment of the trial court in favor of Peter Wayne Fuselier is amended to include an additional award of $26,588.06 for special damages, subject to a 30% reduction in comparative fault. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant, Amoco Production Company.
AFFIRMED AS AMENDED.
NOTES
[*] Judge John A. Patin, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.