653 So.2d 1199 (1995)
Edward LANDRY, Individually and O/B/O His Minor Children, Jay Landry and Jed Landry; Bobby Stringer, Individually and O/B/O His Minor Child, Rochelle Stringer; Kendall Marchand; Michael Ragan and Rosalind Ragan, Individually and O/B/O Their Minor Children, Chance Ragan and Taylor Ragan; David McElroy and L.J. Theriot and Barbara Theriot, Individually and O/B/O Their Minor Children, Jody Theriot and Lisa Theriot,
v.
UNIROYAL CHEMICAL COMPANY, INC, Payne & Keller Company, Inc., Jacobs Engineering Group, Inc., Richard Mesh and John Rein.
No. 94 CW 1274.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
Order Denying Rehearing May 2, 1995.
*1200 Marvin Gros, Donaldsonville, for plaintiffs-respondents.
F. Scott Kaiser, Baton Rouge, for defendants-relators, Uniroyal and John Reine.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
SHORTESS, Judge.
Edward Landry, Bobby Stringer, Kendall Marchand, Michael Ragan, David McElroy, and L.J. Theriot (plaintiffs)[1] brought this tort action against Uniroyal Chemical Company, Inc. (Uniroyal), and Uniroyal's maintenance superintendent, John C. Reine[2] (defendants),[3] alleging defendants intentionally exposed them to asbestos while they were employed by Payne & Keller, working under contract for Uniroyal at its chemical plant in Ascension Parish. Uniroyal and Reine moved for summary judgment, asserting the statutory employer defense.
At the hearing on the motion, plaintiffs conceded Uniroyal was plaintiffs' statutory employer (and, implicitly, that Reine was plaintiffs' statutory co-employee). They contended, however, and the trial court agreed, that summary judgment was inappropriate in this case because of the question of defendants' intent to expose plaintiffs to asbestos. The trial court denied summary judgment, and defendants applied for supervisory writs. We then granted a writ of certiorari.
In order to prevail at trial, plaintiffs must prove both that they were exposed to asbestos and that the exposure was caused by the intentional acts of defendants. Defendants contend neither of these essential elements exists. Defendants are entitled to summary judgment if they can show there is no genuine issue of material fact as to either of these issues, i.e., if they can show either that plaintiffs were not exposed to asbestos or the exposure, if any, was not intentional.
In support of their motion for summary judgment, defendants introduced portions of the depositions of Reine, Richard Mesh, Dale Dixon, and Moran B. Watson, as well as the affidavits of Reine and Vincent J. Stadolnik. From this evidence we have gathered the following facts.
Uniroyal owned a large tank which was not in an enclosed area. This tank was approximately eight feet in diameter with a small manway at the top. The interior wall of the tank was made of a product called Haveg, which was fifty to sixty percent asbestos. For strength, the tank was overlaid with a coating of fiberglass. The Haveg and fiberglass were different colors.
This tank developed a leak. Richard Mesh, one of the few people in the United States who repairs fiberglass-coated Haveg, contracted with Uniroyal to repair it. Mesh found the tank had a crack completely through it, which required repairing both the fiberglass and the Haveg.
*1201 Mesh testified that although he created asbestos dust when grinding the interior of the tank, plaintiffs were not exposed to that dust. He worked alone in the tank wearing a Tivec suit and a respirator with a fresh air supply. The tank had a negative air system which removed the dust and filtered it through a Hepa filter.
Mesh also repaired an agitator shaft and two blades that were inside the tank. The shaft was coated with Haveg. Mesh removed the shaft and blades from the tank and sawed off the Haveg coating with a diamond blade saw in an open area outside the tank. Mesh testified no dust was created, however, because his assistant ran water over the shaft the entire time he was sawing and captured the slurry in a bucket. Reine witnessed this procedure. He stated Mesh wore a Tivec suit and a dust mask during this procedure, as he usually did when he worked outside the tank. Mesh testified the mask was not approved for asbestos use; he wore the mask to protect himself from fiberglass dust and the Tivec suit to keep himself clean because his job is very dirty.
Mesh applied new Haveg glue to repair the agitator blades in a shop building near the tank. While doing that work, he wore his "work clothes" (a Tivec suit) and gloves, but no mask. He stated he did no grinding inside the shop. He ground excess glue off the blades outside the shop.
Mesh created much non-asbestos dust when he ground the new Haveg glue on the agitator blades and when he ground the fiberglass on the outside the tank. Both Reine in his affidavit and Moran B. Watson, Jr.,[4] in his deposition stated they read the label on the Haveg glue and knew it did not contain asbestos. Because of the large amount of dust created by the grinding, Reine or another Uniroyal employee asked Mesh to stop grinding the blades until a Visqueen tent was erected to contain the dust. However, the tent proved to be ineffective. Mesh stated that when he was working outside the tank he advised the other workers the dust was only fiberglass, but they did not believe him.
Mesh was questioned extensively as to whether he created any asbestos dust outside the tank. He stated neither the new Haveg nor the Haveg glue he ground contained asbestos, that he created no dust or hazard when he cut the agitator shaft, and that none of the fiberglass he ground had asbestos in it. However, when asked whether he ever ground asbestos outside the shop, he replied: "It would be very minuscule, if there would have been any. We are talkingI can't remember. No, I don't think so."
Watson conducted an investigation into potential asbestos exposure after employees raised the subject at a safety meeting. He saw Mesh grinding inside the tank, saw him grinding on the new, asbestos-free Haveg, and saw him sawing through the shaft. However, he never saw the dust himself, nor did he ever see Mesh grinding on asbestos-containing Haveg. He testified:
I went back and started looking at the procedures that John [Reine] and Uniroyal had put together for Richard Mesh to do the job. I came back and determined that anytime you do something like that, there is always the possibility of some exposure, maybe, we did not know.
(Emphasis added.)
Because of the employees' concern over this possibility, "[j]ust for moral purposes" he offered them "chest X-rays and the normal pulmonary tests that you take for potential asbestos." Plaintiffs did not offer the results of these tests in rebuttal to defendants' contention that there was no asbestos exposure, and Watson testified he was told "nothing was found."

I.
Were this case before us after trial on the merits, we would have no choice but to find in defendants' favor, as there is no evidence plaintiffs were more likely than not exposed to asbestos. However, we are faced with a motion for summary judgment which *1202 can be granted only if there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law. Summary judgment may not be used to dispense with a case that is difficult to prove. Holmes v. Pottharst, 557 So.2d 1024, 1026 (La.App. 4th Cir.1990). Evidence of a possibility of asbestos exposure, while not sufficient to carry plaintiffs' burden of proof at trial, is sufficient to create a genuine issue of fact which, if material, will defeat summary judgment. This fact is material, however, only if plaintiffs can show a genuine issue of fact exists as to whether any exposure to asbestos suffered by plaintiffs was the result of defendants' intentional acts.

II.
Plaintiffs admit Uniroyal is their statutory employer. Louisiana Revised Statute 23:1032(A) provides that worker's compensation is the exclusive remedy of an employee against his employer or co-employees. However, Revised Statute 23:1032(B) provides an exception to this rule: "Nothing in this Chapter shall affect the liability of the employer... or employee of such employer ... to ... liability, civil or criminal, resulting from an intentional act." Plaintiffs rely on this exception, alleging defendants intentionally exposed them to asbestos.

III.
Initially, plaintiffs contend summary judgment is not an appropriate procedural device for determining the question of intent on summary judgment, citing Mayer v. Valentine Sugars, 444 So.2d 618 (La.1984), for the proposition that intent can be alleged generally, and Penalber v. Blount, 550 So.2d 577, 583 (La.1989), for the general proposition that summary judgment is rarely appropriate for a determination of a subjective fact such as intent. Plaintiffs' reliance on these cases is misplaced, particularly their citation of Mayer. In Mayer, the supreme court held the exception of no cause of action is not the appropriate procedural device to dispose of a 23:1032(B) case when lack of intent is raised, but stated:
Defendant argues that it should be permitted by the exception of no cause of action to penetrate the plaintiff's general allegation of intent to demonstrate that plaintiff's injuries did not in fact result from an intentional act. This is the function of a motion for summary judgment, however, and not that of an exception of no cause of action.
444 So.2d at 620. (Emphasis added.)
In Carey v. UMC (United Mechanical Contractors), 553 So.2d 472 (La.1989), the supreme court summarily reversed a dismissal of a 23:1032(B) case on an exception of no cause of action, stating: "The merit of plaintiff's claim is to be determined after findings of fact upon motion for summary judgment or trial on the merits." Our courts have continued to find summary judgment is an appropriate procedural device for this type case. See Gallon v. Vaughan Contractors, 619 So.2d 746, 748 (La.App. 4th Cir.), writ denied, 625 So.2d 1035 (La.1993); Williams v. Gervais F. Favrot Co., 573 So.2d 533, 541-542 (La.App. 4th Cir.), writ denied, 576 So.2d 49 (La.1991) (summarizing some of the "[m]any opinions" affirming summary judgment); Hood v. South La. Medical Center, 517 So.2d 469, 471 (La.App. 1st Cir.1987).
Having confirmed that summary judgment is an appropriate procedural device, we must now determine whether summary judgment was properly denied on the intent issue under the facts of this case.

IV.
Louisiana courts have narrowly interpreted the intentional act exception to the worker's compensation exclusivity provisions. Gallon, 619 So.2d at 748; King v. Schuylkill Metals Corp., 581 So.2d 300, 302 (La.App. 1st Cir.), writ denied, 584 So.2d 1163 (La.1991). In White v. Monsanto Co., 585 So.2d 1205, 1208 (La.1991), the supreme court explained the meaning of "intentional act" under Revised Statute 23:1032(B):
[T]he person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has *1203 reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional. Bazley v. Tortorich, 397 So.2d 475 (La. 1981).
The term "substantially certain" has been interpreted to mean "nearly inevitable," "virtually sure," and "incapable of failing." Jasmin v. HNV Central Riverfront Corp., 94-1497 p.2 (La.App. 4th Cir. 8/30/94), 642 So.2d 311; Tapia v. Schwegmann Giant Supermarkets, 590 So.2d 806, 807 (La.App. 4th Cir.1991); King, 581 So.2d at 302; Hood, 517 So.2d at 471. It requires more than a reasonable probability, even more than a high probability, that an accident or injury will occur. Brown v. Diversified Hospitality Group, 600 So.2d 902, 907 (La.App. 4th Cir. 1992); Mahfouz v. J.A.C.E. Oilfield Sales & Serv., 569 So.2d 1074, 1077 (La.App. 3d Cir. 1990); Hood, 517 So.2d 469, 471. Mere knowledge and appreciation of risk does not constitute intent, nor does reckless or wanton conduct or gross negligence. Tapia, 590 So.2d at 807-808; Williams v. Gervais F. Favrot Co., 573 So.2d at 540-541.
Our courts have held that allegations of failure to provide a safe place to work,[5] deficiently designed machinery and disregard of OSHA safety provisions,[6] failure to correct unsafe working conditions,[7] and failure to provide specifically requested safety equipment[8] are not sufficient to invoke the intentional act exception of Revised Statute 23:1032(B) absent proof (or in the case of summary judgment, disputed issues of fact) of either defendant's desire to harm plaintiff or defendant's knowledge that his conduct would nearly inevitably cause injury to plaintiff.
In this case, plaintiffs allege in their petition that the process Mesh used to repair the tank caused the warehouse storing the tank to be filled with asbestos dust, that at no time did defendants instruct plaintiffs to put on protective gear or leave the area, that defendants knew the dust particles were asbestos, that Uniroyal had specific knowledge and intent to expose plaintiffs to a hazardous product without adequate equipment and warning, and that Reine is liable for his intentional act of exposing plaintiffs to asbestos with the specific knowledge and intent to cause harm to plaintiffs.
Plaintiffs supplemented their petition with allegations that Uniroyal had knowledge of asbestos work being done on its premises and failed to inform the contractors, subcontractors, and their employees, that it hired an inexperienced subcontractor to remove asbestos, that it failed to follow OSHA and DEQ regulations concerning the handling of asbestos, that it failed to provide masks to all contractors and subcontractors on the premises, and that it failed to warn all contractors and subcontractors that asbestos work was being handled.
In response to these allegations, defendants admit that they posted no signs advising workers that asbestos was being performed at the plant and that they did not provide masks or protective clothing for the employees. However, Reine stated in his deposition that no signs were erected warning of an asbestos hazard because no dust-creating asbestos work was being done outside the closed tank. In his affidavit, Reine stated he directed that Mesh be hired because Mesh is an expert in the field of Haveg repair; that he does not believe, and had no reason to believe, that any of the workers were exposed to asbestos; that he did not desire that plaintiffs be exposed to asbestos; that he did not believe they were substantially certain to be exposed to asbestos; that he was physically present at the work site and witnessed much of Mesh's work; that he wore the same clothing and equipment as *1204 plaintiffs while at the work site; and that he had no reason to dislike plaintiffs or to cause them any harm.
Stadolnik, Uniroyal's factory manager, stated in his affidavit that he does not believe, and had no reason to believe, plaintiffs were exposed to asbestos dust, that he did not desire they be so exposed, and that he did not believe they were substantially certain to be exposed.
Mesh testified in his deposition, as outlined above, that he is "probably a sole repairman in the nation" who does the type work on Haveg that he does; that he was the only person ever exposed to asbestos dust; that he wore a special Tivec suit outside the tank only to protect himself from fiberglass dust and dirt; and that he did not wear an asbestos-approved mask while working outside the tank.
Dixon, a maintenance supervisor for Payne & Keller, stated in his deposition that he did not tell his employees to avoid the tank or put up signs because Mesh had assured him no asbestos would be released; he based his decision on the judgment of Mesh, the Haveg expert.

V.
A party opposing summary judgment cannot rest on the mere allegations of his pleadings but must set forth specific facts showing there is a genuine issue for trial. La.C.C.P. art. 967. Phrases using the words "intentionally" or "with specific knowledge" are not talismans which, by mere recital, transform plaintiffs' assertions into intentional acts. Gallon, 619 So.2d at 748; Williams v. Charity Hospital, 499 So.2d 1260, 1261 (La.App. 4th Cir.1986).
Plaintiffs' petition contains two types of allegations, those which sound in negligence, and those which contain conclusory allegations of intentional conduct. Reine's testimony that he exposed himself to the same conditions as plaintiffs belies any knowledge or belief that the dust contained asbestos and shows an absence of intent to harm plaintiffs. See Faridnia v. Ecolab, Inc., 593 So.2d 936 (La.App. 4th Cir.), writ denied, 595 So.2d 659 (La.1992). Plaintiffs have offered not a scintilla of evidence to support their allegations of intentional action by defendants or to countervail defendants' affidavits and depositions.
This record shows no genuine issue of material fact which could possibly lead to the conclusion that defendants acted in a manner so certain to cause injury that intent to cause injury must be imputed. Our supreme court has held that summary judgment is an appropriate method for disposing of such a case where intent is the critical question, and that question is answered negatively. See Fallo v. Tuboscope Inspection, 444 So.2d 621 (La. 1984). We find the trial court was clearly wrong in denying summary judgment. Accordingly, the supervisory writ is hereby granted and made peremptory, and judgment is rendered dismissing plaintiffs' claims against Uniroyal Chemical Company, Inc., and John C. Reine.
WRIT GRANTED AND MADE PEREMPTORY; RENDERED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Relator's application for rehearing contends that genuine issues of material fact remain regarding defendant's liability for punitive damages under Louisiana Civil Code article 2315.3.
In response, we note that in Billiot v. B.P. Oil Co., 93-1118 (La. 9/29/94,modified on rehearing, 12/16/94), 645 So.2d 604, the Louisiana Supreme Court held that claims for punitive damages under article 2315.3 are not barred by the exclusivity provisions of Louisiana Revised Statute 23:1032(A). Billiot was decided after the trial court denied summary judgment in this case but before it was argued on appeal. In our original opinion, we did not specifically address the issue of whether summary judgment should be granted as to plaintiffs' punitive damages claims.
Article 2315.3 provides that in order to recover punitive damages under article 2315.3, a plaintiff must prove defendant acted with "wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." *1205 "Wanton" and "reckless" have been defined as
that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence.... The usual meaning ... is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.
Lasha v. Olin Corp., 91-459 (La.App. 3d Cir. 3/2/94), 634 So.2d 1354, 1360, quoting Cates v. Beauregard Elec. Coop., 316 So.2d 907, 916 (La.App. 3d Cir.1975), aff'd, 328 So.2d 367 (La.), cert. den., 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). A plaintiff must show defendant's misconduct was committed with the state of mind that he knew public safety was at risk or should have known it was highly probable the harm to the public would follow as a result of his derelictions. In other words, a plaintiff must prove the defendant's alleged acts and omissions of negligence were accompanied by a conscious indifference to consequences amounting almost to a willingness that harm to the public safety would follow. Fuselier v. Amoco Prod. Co., 607 So.2d 1044, 1050 (La.App. 3d Cir.1992); Griffin v. Tenneco Oil Co., 531 So.2d 498, 501 (La.App. 4th Cir.1988), writ denied, 534 So.2d 430 (La.1988).
The evidence adduced by defendants in support of their motion for summary judgment, as summarized in our original opinion, shows defendants relied on Mesh's statements to them that no asbestos would be released during his work, to the extent that Reine wore no protective clothing himself when he was physically present at the work site. This evidence belies any knowledge by defendants that public safety was at risk, and there is no evidence defendants should have known of a risk.[1] Plaintiffs have offered no countervailing evidence whatsoever which could lead to the conclusion defendants exhibited wanton or reckless disregard to public safety. There is thus no genuine issue of material fact remaining which could give viability to plaintiffs' claims for punitive damages.
REHEARING DENIED.
NOTES
[1] The wives of Ragan and Theriot and the minor children of all plaintiffs save McElroy joined in the suit seeking damages for loss of consortium.
[2] Reine's name is erroneously spelled "Rein" in the petition.
[3] Plaintiffs also sued Payne & Keller Company, Inc., Jacobs Engineering Group, Inc., Richard Mesh, and Mesh's insurer, Scottsdale Insurance Company.
[4] The portion of the deposition describing the particulars of Watson's employment was not entered into evidence.
[5] Hood v. South La. Medical Center, 517 So.2d 469, 471 (La.App. 1st Cir.1987).
[6] Cortez v. Hooker Chem. & Plastics Corp., 402 So.2d 249 (La.App. 4th Cir.1981).
[7] Dycus v. Martin Marietta Corp., 568 So.2d 592, 594 (La.App. 4th Cir.), writ denied, 571 So.2d 649 (La.1990).
[8] Jacobsen v. Southeast Distributors, 413 So.2d 995 (La.App. 4th Cir.), writ denied, 415 So.2d 953 (La.1982).
[1] There is, in fact, scant evidence there was a risk.