618 So.2d 1140 (1993)
Calvin ARMSTEAD
v.
SCHWEGMANN GIANT SUPER MARKETS, INC.
No. 92-CA-0594.
Court of Appeal of Louisiana, Fourth Circuit.
April 28, 1993.
Rehearing Denied June 23, 1993.
*1141 Dean A. Sutherland, Susanne Cambre, Sutherland, Juge, Horack & Dwyer and Charles E. McHale, Jr., New Orleans, for appellant.
Bruce A. Cranner, Blue, Williams & Buckley, Metairie, for appellee.
Before WARD, JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
Plaintiff, Calvin Armstead, appeals the dismissal of his suit by the trial court on a motion for summary judgment rendered in favor of the defendant, Schwegmann Giant Supermarkets, Inc. (hereinafter "Schwegmann"). We affirm.

FACTS
On July 14, 1990, while in the course and scope of employment as a meat grinder with Schwegmann's, plaintiff was injured. As he was loading meat into the hopper of the meat grinder, the machine accidently "kicked on" and grabbed the right sleeve of plaintiff's coat. Numerous attempts, by other employees, to shut the machine off were unsuccessful. In order to stop the meat grinder, power to the entire meat department had to be pulled. By the time the power was disconnected, plaintiff's arm was tangled in the blades of the meat grinder.
On November 9, 1990, alleging his injuries were caused by the intentional acts of Schwegmann, plaintiff filed a petition for damages against his employer. In its answer to the petition, Schwegmann denied plaintiff's assertions and pled negligence on the part of Armstead. Schwegmann further pled that the Louisiana Worker's Compensation Act was plaintiff's sole remedy against his employer.
Asserting the "intentional act" exception to the Louisiana Worker's Compensation Act was inapplicable to the present case, Schwegmann filed a Motion for Summary Judgment. The trial court granted Schwegmann's motion for summary judgment and dismissed plaintiff's claim with prejudice.

DISCUSSION
ASSIGNMENT OF ERROR NO. 1
Plaintiff contends the trial court committed reversible error when it granted Schwegmann's motion for summary judgment. Specifically, he argues there exist genuine issues of material fact with regard *1142 to whether Schwegmann knew Armstead's accident was substantially certain to occur.
In order to avoid the general rule that an employee's exclusive remedy for a work-related injury is worker's compensation, plaintiff must establish that his injury was the result of an "intentional act". La. Rev.Stat.Ann. § 23:1032 (West Supp.1992).[1] "Intent" within the context of Section 23:1032 means that the defendant either consciously desired to bring about the physical result of his act or believed it was substantially certain to follow from his conduct. Bazley v. Tortorich, 397 So.2d 475 (La.1981). "Substantially certain to follow" requires more than a reasonable probability that an injury will occur; "certain" has been defined to mean "inevitable" or "incapable of failing". Kent v. Jomac Products, Inc., 542 So.2d 99 (La.App. 1st Cir.1989). The mere knowledge of an employer that a machine is dangerous and that its use, therefore, creates a high probability that someone will eventually be injured is not sufficient to meet the "substantial certainty" requirement. King v. Schuykill Metals Corp., 581 So.2d 300 (La. App. 1st Cir.1991), writ denied 584 So.2d 1163 (La.1991). Furthermore, even where a defendant's conduct is grossly negligent, this fact alone will not allow the imputation of intent. Id.
La.Code Civ.Proc.Ann. art. 966 (West 1984) provides that summary judgment shall be rendered
... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.
Once a motion for summary judgment has been made and supported, the opposing party must affirmatively show that there remains a genuine issue for trial. La.Code Civ.Proc.Ann. art. 967 (West 1984); Osborne v. Vulcan Foundry, Inc., 577 So.2d 318 (La.App. 4th Cir.1991).
In support of its motion for summary judgment, Schwegmann attached the affidavit of Andre Roques, its claims manager, and excerpts from plaintiff's deposition. Andre Roques stated in his affidavit that plaintiff was employed by Schwegmann as a meat department worker when he was injured. He further noted that, since the accident, Armstead had been receiving worker's compensation payments and all his medical expenses were compensable pursuant to the Louisiana Worker's Compensation Act. In his deposition, Armstead stated that he had never experienced any problems with the grinder before the accident, and that he believed no one from Schwegmann intentionally tried to injure him.
In opposition to Schwegmann's motion for summary judgment, plaintiff attached his own affidavit, the affidavit of G. Fred Liebkemann, a mechanical engineer who personally inspected the meat grinder, and Schwegmann's meat department safety checksheets from January 2, 1990 through July 6, 1990. Armstead stated in his affidavit that he was never given any training or instructions on how to operate the meat grinder. Since he was never instructed to use the meat grinder with the steel lid closed, plaintiff claimed he routinely and regularly operated the grinder with the steel lid open. Armstead asserted that although problems with the meat grinder were reported to supervisors by himself and other co-workers in the past, he was instructed to continue using the machine. Safety checksheets indicated the meat grinder needed repairs to the safety switch, which were not performed during the relevant period.
Liebkemann's affidavit indicated that he inspected the meat grinder as well as the only currently available drawings of its parts and mechanisms. He noted that the meat grinder was originally designed with a hinged steel lid which fit over the hopper and with a switch set to preclude operation *1143 if that steel lid was open. Liebkemann further stated that this safety mechanism must have been broken if Armstead's arm was in the hopper while the meat grinder was operating.
Although plaintiff's evidence in opposition to the motion for summary judgment might support a claim of negligence or, arguably, even gross negligence, there is no issue of material fact regarding whether Armstead's injury resulted from an intentional act within the meaning of Section 23:1032. Accordingly, the trial court did not err when it granted summary judgment in favor of Schwegmann.
ASSIGNMENT OF ERROR NO. 2
Plaintiff also contends the trial court committed reversible error by granting Schwegmann's motion for summary judgment prior to the completion of discovery.
In his opposition to summary judgment, plaintiff claimed he needed further discovery to learn the extent of Schwegmann's knowledge, policies, and repair efforts. Plaintiff additionally desired information on other accidents, if any, regarding the grinder, and drawings of the grinder from its manufacturer.
Although the plaintiff should have a fair opportunity to present his claim, there is no absolute right to delay action on a motion for summary judgment until discovery is completed. To delay suit when it appears there is no genuine issue of fact, the party opposing the summary judgment must show a probable injustice. La.Code Civ.Proc.Ann. art. 967 (West 1984); Simoneaux v. E.I. Dupont De Nemours and Company, Inc., 483 So.2d 908, 912-13 (La. 1986); Borne v. Miller, 505 So.2d 160 (La. App. 4th Cir.1987).
Schwegmann complied with the plaintiff's discovery requests. Interrogatories and request for production were answered. Considering plaintiff filed his petition on November 9, 1990 and Schwegmann's Motion for Summary Judgment was not heard until November 15, 1991, plaintiff had ample time in which to present his claim and to conduct discovery. Accordingly, this assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant.
AFFIRMED.
JONES, J., dissents with reasons.
JONES, Judge, dissenting, with reasons.
On November 9, 1990 the plaintiff filed a petition for damages against the defendant. Plaintiff alleged that he sustained permanent and painful crippling injuries to his right hand and arm, while employed as a clerk in the meat department of defendant's supermarket. More specifically he alleged that on July 14, 1990 he was putting raw meat into a meat grinder when it suddenly kicked on without any forewarning, catching the right front sleeve of his uniform and pulling his right arm more than halfway into the machine. As a result of the accident, plaintiff's right arm was butchered from the hand to halfway between his elbow and armpit.
After some limited discovery had been conducted, the defendant filed a motion for summary judgment claiming that no genuine issues of material facts existed in the case and that defendant was entitled to judgment dismissing the plaintiff's action. In support of the motion for summary judgment the defendant submitted a memorandum of law and the following:
1. A statement of undisputed material facts admitting that plaintiff was injured within the course and scope of his employment with the defendant, Schwegmann; that plaintiff was receiving worker's compensation payments from the defendant; that plaintiff's medical treatment was covered by the provisions of the Worker's Compensation Act; and that plaintiff knew of no co-worker who deliberately or intentionally injured him or desired to see him injured.
2. Excerpts from plaintiff's deposition of April 9, 1991 wherein he answered "no" to a question posed by defendant's attorney as to whether he believed anybody deliberately *1144 or intentionally wanted to injure him or see him become injured.
3. An affidavit from Andre Roques, the claims manager for Schwegmann, attesting to the fact that plaintiff was employed by Schwegmann as a meat department worker at the time that he was injured in the course and scope of his employment; that since the accident plaintiff had been receiving worker's compensation payments; and that all medical expenses related to plaintiff's injury were compensable pursuant to the Louisiana Worker's Compensation Act.
This was the sum total of the facts presented to the trial court in support of defendant's motion for summary judgement. However, on appeal, the defendant argues that prior to plaintiff's accident, the meat grinder had worked properly and there were no reported personal injuries involving the grinders. In support of this statement he attaches a copy of his answers to plaintiff's interrogatories wherein he makes this statement. However, an extensive review of the record reveals that these answers to interrogatories are not contained in the record before us. Moreover, in its motion for summary judgment, defendant made no reference whatsoever to whether the grinder had worked properly prior to the accident. Nor was any reference made to the "fact" that there were no reported personal injuries involving the grinder.
This court has no authority to receive evidence which was not considered by the trial court. Holmes v. St. Charles General Hosp., 465 So.2d 117 (La.App. 4th Cir.1985). Since the answers to interrogatories were not introduced at the trial level, they are not part of the record and cannot be considered by this court. Larkin v. First of Georgia Underwriters, 466 So.2d 655 (La. App. 5th Cir.1985).
The only argument advanced to the trial court in support of defendant's motion for summary judgment was that the tort immunity exception of the Worker's Compensation Act precluded the plaintiff from maintaining this action because plaintiff could not prove that his injuries resulted from an "intentional act" on the part of his employer. Thus his only cause of action was for worker's compensation, which he was already receiving. Defendant essentially argued that proof of a failure of the employer to provide a safe working environment was not sufficient to constitute an intentional act pursuant to Bazley v. Tortorich, and its progeny. I disagree.
The test for determining intent was enunciated by the court in Bazley v. Tortorich, 397 So.2d 475 (La.1981) wherein it stated:
... The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. (Emphasis added)
Id. at 481.
In his original petition for damages plaintiff specifically alleged:
... that defendant, acting through its employees, agents and/or supervisors, knew, or had reason to know, long before July 14, 1990, that the meat grinding machine was defective for failure to have a proper guard mechanism to prevent an operator's hand from being drawn into the machine and that the machine previously had failed to work properly in relation to the two safety devices or switches that electrically control the "on and off" operations of the machine. The defendant, therefore, knew that the injuries sustained by the plaintiff were substantially certain to occur. (Emphasis added)
In my opinion this allegation clearly raises the question of whether plaintiff's injury resulted from the type of "intentional act" envisioned by La.R.S. 23:1032.
Moreover, in support of his opposition to the defendant's motion for summary judgment, the plaintiff submitted evidence sufficient to show that material issues of facts exists as to whether the plaintiff's injuries *1145 were directly and intentionally caused by his employer's actions and inactions.
In opposing the motion for summary judgment plaintiff submitted his own notarized affidavit, excerpts from his deposition, a notarized affidavit from G. Fred Liebkemann, and numerous safety checksheets which had been obtained from the defendant during the course of discovery.
In his deposition and affidavit, plaintiff attested to the fact that after the accident, several co-employees told him that the machine was defective and had malfunctioned on prior occasions. One or two employees told him that the machine had kicked on while they were cleaning it. In his deposition, the plaintiff also stated that problems with the machines had been reported but that the machines were never fixed. Moreover, the meat department safety checksheets for the six month period prior to or leading up to the accident indicated that the safety switch on the meat grinder was broken and/or on order for an extended period of time.
G. Fred Liebkemann, a mechanical engineer who examined the meat grinder approximately one year after the accident attested to the fact that he had reviewed the manual and documents of the grinder including drawings of the parts and mechanism. The grinder he concluded was designed with a hinged steel lid which fits over the hopper where the meat is placed. When the lid is closed, a person is unable to put his hand or arm inside the hopper. Further, he attested to the fact that the grinder was originally designed with a mechanism that did not allow the meat grinder to operate if the steel lid was raised or open. A warning label on the grinder provides that the meat grinder should not be operated if the safety lid is not in working order. Further, the mechanism which would have shut off the meat grinder when the safety lid was open must have been broken if plaintiff's arm was in the hopper while the meat grinder was operating, and a switch which was not part of the meat grinder's original design was placed on the meat grinder following plaintiff's accident.
Schwegmann's self-serving statement that it did not intend plaintiff's injury to occur and plaintiff's statement that he did not believe that anyone intentionally tried to hurt him are nothing more than conclusory allegations and are not determinate of the issue of whether this was an intentional tort. Nor is the fact that the plaintiff stated that he never experienced any problems with the grinder before the accident dispositive of the issue of whether an intentional act by the employer was committed. The issue of intent is not limited to a desire to cause the harm or malice. McDonald v. Gonzales, 479 So.2d 9 (La.App. 5th Cir. 1985). The real issue is whether a reasonable man in the defendant's position would be substantially certain that his act, i.e. ordering plaintiff to continue to operate a defective meat grinder would result in plaintiff's injury.
The plaintiff's evidence strongly suggests that the safety switch on the meat grinder was specifically designed to prevent injuries such as the injury that occurred to the plaintiff. It is uncontested that the specific danger to be guarded against by the safety switch was realized in this case. Based on the existence of the above stated set of circumstances a reasonable trier of fact could conclude that Schwegmann knew that it was substantially certain that the injury sustained by the plaintiff would occur. Thus, because Schwegmann did not repair the safety switch or discontinue the use of the machine, they obviously intended the injury which resulted to the plaintiff.
I am aware of the various cases wherein this court and other courts have interpreted Bazley v. Tortorich, supra to state that substantial certainty is not an alternative to intentional act but a method of proving that the act was intentional. Dycus v. Martin Marietta Corp., 568 So.2d 592 (La. App. 4th Cir.1990), writ denied, 571 So.2d 649 (La.1990); Babin v. Edwards, 456 So.2d 659 (La.App. 1st Cir.1984), writ denied, 460 So.2d 604 (La.1984). However the clear wording of Bazley leads me to conclude that the substantial certainty test is in fact an alternative test.
*1146 Admittedly, in cases where the employee's injury is caused by ordinary negligence on the part of the employer, recovery lies exclusively in worker's compensation. However, in cases where the injury is caused by an intentional act, the employee may also recover pursuant to traditional tort concepts. The issue to be addressed in cases such as this is what degree of negligence or fault is required to take an act out of the realm of ordinary negligence and into the realm of an intentional act.
The majority concedes that plaintiff's evidence in opposition to the motion for summary judgment might support a claim of negligence or arguably even gross negligence, but states that such evidence presents no issue of material fact regarding whether Armstead's injury resulted from an intentional act within the meaning of Section 23:1032. Although I concede that this principal of law is amply supported by existing jurisprudence, I disagree with the reasoning advanced in those prior cases and would decline to follow cases such as Williams v. Gervais F. Favrot Co., Inc., 573 So.2d 533 (La.App. 4th Cir.1991), writ denied, 576 So.2d 49 (La.1991) and its progeny.
Instead, I embrace the line of reasoning expressed in the dissent in Armstead v. Boh Brothers, Const. Co., Inc., 609 So.2d 965 (La.App. 4th Cir.1992) and emphatically disagree with the court's finding in King v. Schuykill Metal Corp., 581 So.2d 300 (La. App. 1st Cir.1991), writ denied, 584 So.2d 1163 (La.1991) that since the plaintiff only alleged facts which tended to show that his employer was grossly negligent, the employer was not guilty of an intentional act within the contemplation of La.R.S. 23:1032
B. Id. 581 So.2d at 303.
In this respect, I believe that the definition of fault contained in La.C.C. art. 3506 is instructive. That article provides:
Art. 3506. Whenever the terms of law, employed in this Code, have not been particularly defined therein, they shall be understood as follows:
* * * * * *
13. Fault.___ There are in law three degrees of faults: the gross, the slight, and the very slight fault.
The gross fault is that which proceeds from inexcusable negligence or ignorance; it is considered as nearly equal to fraud.
The slight fault is that want of care which a prudent man usually takes of his business.
The very slight fault is that which is excusable, and for which no responsibility is incurred.
Based upon the Legislature's classification of the different degrees of fault, I have no difficulty in concluding that the facts alleged in this case raise issues of gross fault which would be nearly equated with fraud. If, in fact, the employer knew the machine was defective but persisted in requiring the plaintiff to use the defective machine, such acts constitute gross fault and/or negligence. As such, this type of fault should constitute an intentional act on the part of the employer. In this regard, I emphatically disagree with the various cases wherein our courts have stated that evidence of gross negligence on the part of the employer is not sufficient to establish that an intentional act occurred.
Moreover, I believe the numerous cases wherein this court has specifically stated that failure to correct unsafe working conditions is insufficient proof of an intentional tort by an employer for purposes of avoiding the worker's compensation exclusive remedy provision should be reexamined. Faridnia v. Ecolab, Inc., 593 So.2d 936 (La.App. 4th Cir.1992), writ denied, 595 So.2d 659 (La.1992); Dycus, supra. The rationale expounded in those cases is irreconcilable with the rationale of the silicosis/asbestosis cases wherein we recognized that a plaintiff who alleges that his employer has knowingly failed to provide him with adequate or necessary protective equipment with which to perform his job has stated sufficient facts to state a cause of action for an intentional tort. Holmes v. Pottharst, 557 So.2d 1024 (La.App. 4th Cir. 1990), Goodman v. Dixie Machine Welding and Metal, 467 So.2d 61 (La. 4th Cir. *1147 1985), Quick v. Murphy Oil Co., 446 So.2d 775 (La.App. 4th Cir.1982), writ denied, 447 So.2d 1074 (La.1984). In Holmes, supra, a sandblaster's widow filed suit against her deceased husband's employer and employees alleging that her husband had died from silicosis he contracted on account of his work as a sandblaster. The trial court granted the employer's motion for summary judgment and dismissed the action. In reversing the trial court, this court specifically recognized the fact that because of the exclusivity provision of the worker's compensation statute, the plaintiff could only prevail if she proved that her husband's silicosis was the result of an intentional act. The court noted that the plaintiff had pled that her husband's employer knowingly failed to provide him with adequate protective clothing. In opposition to the motion for summary judgment an affidavit from a co-worker was submitted stating the type of clothing worn by the husband and the fact that the clothing was inadequate. Since the affidavit raised a genuine issue as to whether Holmes' superiors knew that he was working while wearing inadequate protective clothing which would be substantially certain to harm him, this court reversed the summary judgment and remanded the matter for trial. I find no viable distinction between the injury suffered by Holmes because of his employer's failure to provide him with adequate protective clothing and the injury suffered by Armstead because of his employer's failure to provide him with a machine that had a required safety switch.
The notion that employers should not be held liable in tort, but rather should be allowed to pay the employee the pittance provided for in the worker's compensation law in cases where the injury resulted from the alleged failure of the employer to provide a safe work place is irreconcilable with the sentiments expressed by the Legislature in La.R.S. 23:13 which provides:
§ 13. Employers' duty as to safety
Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees.... (Emphasis added)
By continuing to allow immunity for worker's compensation purposes in a case where the employee is injured as a result of being forced to work in unsafe environments, we minimize the importance of the duty to provide a safe work place. Additionally by allowing the employer to treat such injuries as ordinary business expenses, we devalue the importance of human life. Here, the employer was allegedly aware of the defect in the meat grinder, yet he allegedly ignored his duty to provide a safe work place and required the plaintiff to continue to use the defective machine on a daily basis.
The court should reconsider the issues of whether gross negligence is sufficient to establish an intentional tort, and whether a flagrant violation of La.R.S. 23:13 can constitute a sufficient basis for finding an intentional tort. In Williams v. Gervais F. Favrot Co., Inc., supra, the court reasoned that because the Legislature decided not to adopt specific language including gross negligence or violations of statutes or safety regulations in its definition of an intentional act, such acts are not included in the intentional act exclusion. I disagree.
Absent an express repeal of the codal provisions defining gross negligence and or the statute imposing a duty upon employer's to provide a safe work place, the intentional act provisions of the statute should be read in such a manner as to give effect to all of the Legislative provisions regulating the employer-employee relationship. For this reason, I believe the courts err in routinely excluding all cases of alleged gross negligence from the definition of an intentional act.
*1148 I would also find that the court abused its discretion when it refused the plaintiff's request to allow additional time for discovery and granted the defendant's motion for summary judgment, where the record indicates no negligence or dereliction on the part of the plaintiff in attempting to secure the information needed to prosecute his claim.
In response to the defendant's motion for summary judgment, the plaintiff argued that the motion was premature since he had not been afforded the opportunity to complete necessary discovery. He alleged that while the defendant had responded to preliminary interrogatories and a request for production, the plaintiff had not yet taken needed depositions of defendant's manager, supervisor and/or other employees to ascertain the extent of defendant's knowledge of the defective machine, defendant's policy regarding the use of broken equipment, and the number of other accidents that resulted from the continued use of the defective equipment.
Additionally the plaintiff was still seeking to obtain the original drawings of the grinder from the manufacturer to enable his expert, Mr. Liebkemann to complete his investigation of the machine. The manufacturer of the defective machine had allegedly been out of business for several years. Plaintiff's expert has already submitted an affidavit attesting to the fact that the meat grinder was originally designed with a mechanism that did not allow the machine to operate if the steel lid was raised or open; that when the hinged steel lid is closed, an individual is unable to put his hand or arm inside the hopper; and that the mechanism which would have shut off the meat grinder when the safety lid was open must have been broken if the plaintiff's arm was in the hopper while the meat grinder was operating. However, plaintiff avowed that his expert was unable to complete his investigation until he could obtain access to the design drawings on the meat grinder.
My review of the record reveals no dereliction of duty on the part of the plaintiff's attorney in seeking to obtain the needed information to prosecute this case. The petition was initially filed on November 9, 1990, along with a set of interrogatories. The defendant did not answer the petition until January 2, 1991 and apparently did not respond to the interrogatories until sometime in March, 1991. Charity Hospital filed an intervention in February and the parties responded to the intervention in March. On July 10, 1991 the plaintiff filed a supplemental and amending petition adding the manufacturers, designer, and distributor of the machine as defendants and also on that date filed a medical records deposition on Charity Hospital. On August 7, 1991 the defendant Schwegmann answered the supplemental and amending petition and on August 9, 1991 Schwegmann filed its motion for summary judgment. This sequence of events indicates to me that this is not a case where the plaintiff simply filed his petition and did nothing until the defendant filed a motion for summary judgment and then sought to prolong baseless litigation by seeking additional time for discovery. Rather, the plaintiff appears to have undertaken an orderly method of proceeding with his case and should not be penalized by having his lawsuit dismissed prior to being allowed time to develop the additional facts needed to further substantiate his claim.
Defendant's assertion that "it should not be forced to incur additional litigation costs while plaintiff seeks discovery from another party over which Schwegmann has no control" misses the point. Schwegmann's belated concern over litigation costs are of no concern to this writer. The proper time to have considered litigation costs would have been when the employer chose to allow the continuous use of the machine with a broken safety switch. Failing to do so, he is hardly in a position to complain of litigation costs. The issue of litigation costs pales in comparison to the cost occasioned to the plaintiff by the loss of his arm.
The trial court has discretion to refuse a summary judgment because depositions or other discovery has not been completed. However, in cases like this, where the plaintiff has sufficiently alleged reasons *1149 why other evidence to support his case cannot be produced, it is an abuse of discretion for the court to refuse to grant a continuance. Migliore v. Kinsley, 531 So.2d 1091, 1094 (La.App. 4th Cir.1988).
In my opinion, the plaintiff's petition adequately raised the issue of whether his employer intended to cause him serious harm by forcing him to operate a defective meat grinder. Additionally, in his opposition to the motion for summary judgment, the plaintiff also raised the issue of whether the employer intended to cause him serious harm by requiring him to operate an inherently dangerous machine without providing adequate training concerning the proper use of a meat grinder. The defendant's contention that plaintiff could not show an intentional act on the part of his employer was not supported by proper documentation and his motion for summary judgment should have been denied.
Assuming arguendo that the arguments made on appeal had been supported by proper documentation, plaintiff, nevertheless, submitted sufficient documentation to controvert the motion for summary judgment. Moreover, the affidavits and safety check sheets submitted by the plaintiff with his opposition to the defendant's motion for summary judgment raise serious questions as to whether a reasonable person, in the defendant's position know that the continued use of the defective machine made it inevitable that the injury to the plaintiff was substantially certain to occur. Admittedly, the plaintiff has a very difficult burden to meet in order to establish that his employer knew that the machine was defective and that the injuries that he subsequently suffered were substantially certain to occur. However, in Holmes, supra, the court correctly noted that summary judgment may not be used to dispense with a case that may be difficult to prove; rather, summary judgment is appropriate only when there is no genuine issue as to any material fact. Id. at 1026. Therefore, I would reverse the judgment of the trial court which dismissed the plaintiff's claims against his employer, thereby denying the plaintiff the right to fully pursue his claim at a trial on the merits.
For these reasons, I respectfully dissent.
NOTES
[1] La.Rev.Stat.Ann. § 23:1032 provides, in pertinent part, that:

B. Nothing in this Chapter shall affect the liability of the employer ... to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.