Lanette JACKSON and Gregory Jackson,

v.

LATINI MACHINE COMPANY, Sentry Insurance Company, Sathers, and St. Paul Fire and Marine Insurance Company.

Civil Action No. 96–2728.

United States District Court, E.D. Louisiana.

April 10, 1997.

Iris Ann Tate, Wilkerson, Tate & Williams, New Orleans, for plaintiffs.

Gregory Jackson, New Orleans, pro se.

Stephen N. Elliott, Bernard, Cassisa & Elliott, Metairie, for Defendants.

### ORDER AND REASON

FALLON, District Judge.

Before this Court is Sathers' motion for summary judgment. For the following reasons, this motion is GRANTED.

### BACKGROUND

Technical Services Incorporation (hereinafter Technical) is an employment placement service. In late, September 1995, Technical placed the plaintiff, Lanette Jackson, with Sathers Inc. (hereinafter Sathers) a candy manufacturer. The plaintiff's job included operating a candy machine manufactured by Latini Machine Company (hereinafter Latini). On September 29, 1995, the plaintiff while operating the candy machine opened the top of the machine to clean out a stoppage. When she stuck her hand in the machine, a rotating blade used to cut the candy into the proper shape cut off her left index finger at the first joint. Surgery to reattach the finger proved to be unsuccessful. Since the accident, Technical has provided workman's compensation benefit to the plaintiff pursuant to the placement contract between Technical and Sathers.

Plaintiff has brought suit against Sathers, St Paul Fire and Marine Insurance Company (hereinafter St. Paul), Sathers' insurer, Latini and Sentry Insurance Company. The plaintiff makes two alternative arguments. She states if Sathers is deemed to be her statutory employer she should be allowed recovery for an intentional tort against Sathers. In the alternative, she argues if Sathers is not her statutory employer, recovery is possible under a theory of negligence. St. Paul in its role as Sathers' insurer filed a motion for summary judgment Sathers now moves for summary judgment on its own declaring that it is the statutory employer of the plaintiff and there is lack of an intentional tort on its part.

### LEGAL STANDARD

Summary judgment will be granted only if the pleadings, depositions, answers to the interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. In this analysis, the Court must view the facts and inferences from the evidence in the light most favorable to the nonmoving party. *Crescent Towing v. M/V Amax*, 40 F.3d 741, 743 (5th Cir.1994). Once the moving party has demonstrated that there is no genuine issue of material fact, the burden shifts to the non-moving party to prove there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585–587, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986). The nonmoving party may not depend solely on denials contained in the pleadings, but must submit specific facts. Fed R. Civ. P. 56(e). Mere conclusory rebuttals by the nonmoving party will not defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *reh'g denied*, 961 F.2d 215 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Moreover if the factual context makes the nonmoving party's claim implausible, the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). This legal standard will be used in the following analysis.

### ANALYSIS

The plaintiff's basis for recovery against the defendant is grounded on two premises. First, the plaintiff accuses Sathers of intentionally causing her injury and in the alternative charges Sathers negligently injured her. These two premises cover the possibility that Sathers is a statutory employer of the plaintiff and the possibility Sathers is not a statutory employer of the plaintiff. If Sathers is found to be a statutory employer of the plaintiff, the plaintiff's basis for recovery will extend beyond work-man's compensation and include direct recovery from the statutory employer for intentional torts. La.Rev.Stat. Ann. § 23:1032(B) (West.1987). If Sathers fails to be found to be a statutory employer of the plaintiff, the plaintiff may recover for negligent torts committed by Sathers.

The defendant has moved for summary judgment stating it is the statutory employer of the plaintiff and thus, the plaintiff's only remedy is through workman's compensation or by proving the existence of an intentional tort on its part. Since recovery under an intentional tort is predicated on the existence of a statutory relationship, the presence of such a relationship between the plaintiff and Sathers will be examined first. If such a connections between the parties is found, the Court will explore the issue of the whether Sathers intentionally caused the plaintiff's injury.

### I. IS SATHERS A STATUTORY EMPLOYER OF THE PLAINTIFF?

A principal employer (hereinafter principal) who hires a contractor to perform work that is part of his trade, business, or occupation becomes a statutory employer of the contractor's employees. *Keller v. Evans Cooperage Inc.*, 641 So.2d 552 (La.App. 5 Cir.1994). The principal's liability to any injured employee of the contractor is limited to workman's compensation benefits if the principal occupies the role of statutory employer of the injured employee. La.Rev.Stat. Ann. § 23:1061(A) (West Supp.1997). The injured employee, however, can recover directly from a statutory employer if the injury results from an intentional tort on the part of the statutory employer.

Courts in Louisiana have grappled with the definition of statutory employer. In this area, a page of history is worth more than a book of logic. A brief review of the jurisprudence is instructive.

In *Thibodaux v. Sun Oil*, 218 La. 453, 49 So.2d 852 (La.1950). the court stressed the need of an integral relationship which requires that the work of the contractor be an integral part of the work of the principal. If the work the contractor's employees performed for the principal comprised an inte-

gral part of the principal's work, the principal occupied the role of statutory employer for the contractor's employees. Liberal application of the integral relationship test lead to very few instances in which the principal failed to be deemed the statutory employer of the contractor's employees.

The Louisiana Supreme Court in *Berry v. Holston Well Service Inc.,* 488 So.2d 934 (La.1986) criticized the integral relationship test and offered a three tier alternative. The first tier of the alternative listed a determinative factor whose presence precluded existence of a statutory employment relationship. *Id.* at 938. This factor dealt with the situation in which the contractor's employees performed specialized work not part of the principal's ordinary business. Presence of such a situation eliminated the possibility of the existence of a statutory employment relationship. *Id.* Absence of this factor requires analysis of the second tier of the alternative. This tier included factors to be regarded in determining the possible existence of a statutory employment relationship. These included such things as whether or not the contract work was regular and predictable, whether the principal have the equipment and personnel capable of performing the work, and whether it is consistent with industry practice. *Id.* The last tier of the alternative instructs the court to determine if the principal is engaged in the work at the time of the alleged accident. For the principal to be the statutory employer, he must be engaged in the work that the contractor's employees are performing. *Id.* at 939.

■■■ In 1989 the legislature amended R.S. 23:1061 (La.Rev.Stat. Ann § 23:1061 (West. 1997)). In *Kirkland v. Riverwood Intern. USA Inc.,* 681 So.2d 329 (La.1996), the Louisiana Supreme Court held the legislature in passing this amendment acted in response to *Berry*'s rule proclaiming presence of specialization determinative in finding absence of statutory employment, and sought to prohibit the use of specialization as the lone determining factor in finding absence of statutory employment. *Kirkland* held courts may use specialization as a factor in determining presence of statutory employment, but should not rely on it as a sole factor. *Id.* at 336. The

court listed eight factors to be considered in determining whether a statutory employment situation exists. These are:

(1) The nature of the business of the alleged principal;

(2) Whether the work was specialized or not;

(3) Whether the contract work was routine, customary, ordinary, or usual;

(4) Whether the alleged principal used his own employees to perform the work; or whether he contracted out all or most of each work;

(5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;

(6) Whether those in similar businesses normally contract out this type of work or whether they have their own employees perform the work;

(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract, and

(8) Whether the principal was engaged in the contract work at the time of the incident.

*Kirkland* at 336.

■■■ The court emphasized that the totality of the circumstances must be examined in deciding the existence of a statutory employer and no one factor is determinative in making this decision *Kirkland* at 337. In addition, the court added that such an examination is frequently difficult to accomplish on motion for summary judgment which requires lack of a genuine issue of material fact that would defeat entitlement to judgment as a matter of law. *Id.*

Sathers as mover in the instant matter carries the burden of submitting evidence on each of the eight Kirkland factors that will allow this Court to probe the relationship between Sathers and the plaintiff. Sathers has introduced evidence on each point and that evidence will now be examined to determine if a genuine issue of material fact exists.

### 1. The nature of the business of the alleged Principal

Sathers manufactures candy. New Orleans is one of its five factories. At its New Orleans location, Sathers manufactures and packages candy in bulk. Part of the work involves manufacturing lollipops.[1] The plaintiff's job involved operating a machine that manufactured lollipops. Thus, it is clear that the plaintiff's work at the time of accident involved the business of Sathers.

### 2. Was the work done by the plaintiff specialized?

The plaintiff in opposition to the defendant attempts to define specialized work as work that requires extensive training.[2] This, however, is not the way specialization is defined in this context. Specialized work is work done apart from the principal's usual trade, business, or occupation. The plaintiff participated in the work of the Sathers by operating a machine that generated lollipops. The manufacturing of lollipops is part of Sathers' candy production factory in New Orleans. The defendant submitted evidence to indicate that lollipop production occurs approximately eighty hours per week at its New Orleans location.[3] Accordingly, the work the plaintiff performed for Sathers was not specialized.

### 3. Was the work Performed by the plaintiff routine. customary, ordinary, or usual?

These questions concern essentially the same factors as the question above. Ordinary, routine, and customary work by its definition lacks the characteristic of specialized work. As shown above the work of Sathers' New Orleans location included the generation of lollipops and this production took place eighty hours per week. Since the plaintiff participated in the manufacturing of lollipops, she can be said to have performed Sathers' ordinary, routine, and customary work.

### 4. Did Sathers use its own employees to perform the work or did it contract out most of its work?

Sathers produced evidence that ordinarily the work performed by the plaintiff is usually performed by its own employees.[4] At the time Sathers contracted with Technical to provide employees there existed an unusually high demand for lollipops. Reasons for this high demand included the approaching Halloween and Christmas holidays. The plaintiff in opposition on this point raises the issue of Sathers failing to establish how often it hired contract workers, the number of workers hired and the type of work they performed. Sathers has pointed out it hired contract workers during high demand times and that these workers performed work its own employees performed. The number of workers hired by Sathers is not pertinent to this issue. Thus, Sathers has presented evidence to indicate that it customarily used its own employees to perform the work of the plaintiff and contracted for the plaintiff's services only when demand for its candies exceeded the production capacity of its employees.

### 5. Did Sathers have the Personnel and equipment to Perform the contract work?

The evidence indicates that Sathers possessed the personnel to manufacture lollipops.[5] Sathers owned the equipment used to produce the candy, namely the Latini die pop forming line.[6] Accordingly, Sathers had both the personnel and the equipment necessary to perform the work done by the plaintiff.

### 6. Do candy manufacturers normally contract out work done by the plaintiff or do they have their own employees perform the work?

Sathers failed to submit evidence about industry practice in contracting out work. It

---

1. See Exhibit 1 (Affidavit of Henry Jacques) of Defendant's Memorandum in Support of Its Motion For Summary Judgment.

2. See Plaintiff's Memorandum in Opposition of Motion for Summary Judgment by Sathers Inc. page 3.

3. Id.

4. Id.

5. Id.

6. See Exhibit B of Defendant's Memorandum in Support of Its Motion for Summary Judgment.

did, however, allege that it does not normally contract out the type of the work done by the plaintiff. The plaintiff asserts absence of this factor should be used to deny summary judgment for Sathers. The court in *Kirkland,* however, urged consideration of the totality of factors rather than focus on only certain factors. Accordingly, a failure by Sathers to completely address this issue is not fatal to its motion for summary judgment.

### 7. Was Technical an independent business enterprise which insured the plaintiff and included that cost in the contract?

By the plaintiff's admissions, Technical is an independent business enterprise. The defendant produced a copy of the contract between Technical and Sathers.[7] This contract demonstrates Technical is an independent business entry. It also confirms Technical agreed to provide insurance for the plaintiff. Consequently, Sathers has proven existence of this factor in the Kirkland scheme.

### 8. Was Sathers involved in the contract work at the time of the plaintiff's incident?

The last factor focuses on whether Sathers was producing candy at the time of the plaintiff's injury. It should be apparent from the discussion of the seven other factors that Sathers work comprised the manufacture of candy when the plaintiff's injury occurred.

Existence of a statutory employment relationship is proven by considering all eight of the Kirkland factors. The presence or absence of one factor is not determinative and the presence of one factor may compensate for the lack of another. Sathers has proven the presence of seven of the eight factors pointing to an existence of a statutory employment relationship. The absence of one of the factors is adequately compensated by the presence of the seven other factors. Thus, Sathers has carried its burden and proven that there is a lack of a genuine issue of material fact concerning its role as the plaintiff's statutory employer.

Since Sathers is the plaintiff's statutory employer, the plaintiff may recover in a tort suit only for an intentional tort. The presence of such a tort will now be explored.

## II. DID SATHERS INTENTIONALLY HARM THE PLAINTIFF?

In the present case, the plaintiff alleges that if the defendant is found to be her statutory employer, she may still recover from them based on a theory of intentional tort.

■ The workman's compensation scheme in Louisiana accords injured employees rights against their employer exclusive of all other rights and remedies available to the employee. La.Rev.Stat. Ann. 23:1032(A) (West Supp.1997). An exception is made, however, when the injury is the result of an intentional tort. La.Rev.Stat. Ann. 23:1032(B) (West Supp.1997). In this instance, the injured employee's rights exceed those available through workman's compensation and he may bring suit against his employer under the doctrine of an intentional tort.

■ Louisiana courts have narrowly interpreted the intentional tort exception to the workman's compensation statutes. Under Louisiana law a tort is intentional only when the defendant consciously desires to bring about the physical results of his act or believes those results are substantially certain to follow from his conduct. *Bourque v. Nan Ya Plastics Corp. America,* 906 F.Supp. 348 (M.D.La.1995). Mere knowledge and appreciation of risk fails to constitute intent. *Williams v. Gervais F. Favrot Company Inc.,* 573 So.2d 533 (La.App. 4th Cir.1991). *writ denied* 576 So.2d 49 (La.1991). In addition, gross negligence, disregard of safety regulations, or reckless or wanton conduct is not sufficient to form intent. *Id.* Even when an employee is injured when operating a machine, mere knowledge that the machine is dangerous and that its use creates a high probability that someone will eventually be injured does not meet the requirement for intent under the intentional tort exception to workman's compensation. *Armstead v.*

---

**7.** *See* Exhibit A of Defendant's Memorandum in Support of Its Motion for Summary Judgment.

*Schwegmann Giant Super Markets Inc.*, 618 So.2d 1140 (La.App. 4th Cir.1993). *writ denied* 629 So.2d 347 (La.1993).

 The defendant in the instant matter submitted evidence that the plaintiff received two weeks of training on the use of the machine the defendant intended her to run.[8] The trainer advised the plaintiff to be extremely careful when placing her hands in or near the machine.[9] This information is particularly germane to the present motion before the Court because the plaintiff received her impairment after placing her hand in the machine. Furnishing of such training and information about the machine indicates an absence of a conscious desire on the defendant's part to harm the plaintiff. On the contrary, it demonstrates the defendant's concern about the plaintiff's safety.

The plaintiff in opposition to the defendant on this issue argues that the safety training was incomplete because the defendant failed to provide the plaintiff with a written safety or training manual. This failure does not infuse the defendant with a conscious desire to hurt the plaintiff.

Even though it appears the defendant harbored no intentional desire on the defendant's part to hurt the plaintiff, the plaintiff may still recover under the theory of intentional tort if a substantial certainty exists that the defendant knew because of his actions the plaintiff would be injured. Evidence presented by the defendant in this case belies his knowing with a substantial certainty the plaintiff would be harmed. The defendant has shown the plaintiff received training on the machine particularly with regard to the dangers of placing her hands in the machine. Also proof introduced by the defendant, shows a lack of injuries on the machine since its purchase date in October of 1992. It is objectively reasonable to conclude that these actions failed to impart knowledge to the defendant that it was substantially certain the plaintiff would be wounded.

The plaintiff asserts the defendant failed to inform her that the machine blade would continue rotating for a few seconds after the machine was turned off and the defendant knew that the plaintiff would be injured by the machine. For an intentional tort to be present, the defendant must be substantially certain that his actions will harm the plaintiff. Courts in Louisiana have held that knowledge of the dangers of a machine does not give rise to substantial certainty (within the context of an intentional tort) of injury from the machine. *Armstead* at 618 So.2d 1140. Thus, knowledge by the defendant that the blade continued rotating after the machine was switched off does not lead to the substantial certainty of injury to the plaintiff.

Thus, not only did the defendant lack a conscious desire to harm the plaintiff, his actions did not make it substantially certain the plaintiff would be injured. Accordingly, it is found that the defendant did not commit an intentional tort on the plaintiff.

### III. SHOULD ON–GOING DISCOVERY DENY THE MOTION FOR SUMMARY JUDGMENT?

 Finally, the plaintiff asserts that summary judgment is premature because another defendant, Latini, has received an extension of time for responding to discovery propounded by the plaintiff. To prevent the issuance of summary judgment until additional discovery can be completed, the party requesting the discovery must make clear what information is sought and how it would precluded summary judgment. *Shortt v. Richlands Mall Assoc.*, 781 F.Supp. 454 (D.C.Va.1991).

The plaintiff has failed to demonstrate how discovery from the manufacturer of the machine that injured her would concern the statutory relationship between her and the defendant. Also, lacking is an illustration of how discovery from Latini would involve an intentional tort by the defendant. Thus, the plaintiff fails to established how on-going discovery with Latini involves Sathers' motion for summary judgment.

---

**8.** *See* Exhibit Two of Defendant's Memorandum in Support of Its Motion for Summary Judgment.

**9.** *Id.*

**CONCLUSION**

For the forgoing reasons, the Court finds that the defendant is the plaintiff's statutory employer and did not commit an intentional tort on the plaintiff. Accordingly, the Court GRANTS the defendant's motion for summary judgment.[10]

---

10. This opinion moots St. Paul's (Sathers' insurer) motion for summary judgment because dismissal of the claim against Sathers releases St. Paul also.