In WILLIAMS, J.
This wrongful death and survival action was brought by Need and Saundra Temple, the parents of Conley Temple (“Conley”), an employee of Cell Tech Services Partnership (“Cell Tech”). Conley fell to his death while working as a radio tower worker at a jobsite in Knoxville, Tennessee. The defendants, Cell Tech and its liability insurer, United National Insur- *1264 anee Company (“UNIC”),[1] seek supervisory review of the district court’s decision, denying their motions for summary judgment. The defendants urged that the plaintiffs’ exclusive remedy was in workers’ compensation. For the following reasons, we reverse the trial court’s ruling.
FACTS
On October 10, 1996, Conley fell to his death while attempting to descend from the top of the tower at a Knoxville, Tennessee jobsite. Conley was using a method known as “riding the rope.” During this practice, a tower worker descends from the tower by attaching himself to a rope or cable which runs from the ground, loops through a block high on the tower and comes down on the other side. The rope or cable is attached on one side to a cathead winch which is either mounted on the ground or mounted to a truck. When this practice is performed as intended, the employee atop the tower attaches the loose hanging end of the rope and is “winched down” from the tower by the cathead winch, which is operated by another employee located on the ground. In order for this method to be successful, the person on the ground has to activate the cathead, and insure the cable is | ?,attached to the cat-head so that the employee does not attach to a free-hanging line.
On the day of the accident, Conley was atop a high cell tower with a co-employee, Scotty Warbington. Toby Warbington, another employee (and Scotty Warbing-ton’s brother), was on the ground. While atop the tower, and near the end of the workday, Conley told Scotty that he needed to get down from the tower. Scotty then asked Conley whether he could climb down or whether he “needed a ride.” Conley told him there was no way he was going to climb down the tower. At that time, Scotty allegedly shouted to his brother, Toby, that Conley was about to descend down the line. According to Toby, he began walking toward the cathead winch to secure the rope. Apparently, the other end of the rope was not attached to the winch, but instead was simply “laying up on the winch.” When Conley attached to the rope and attempted to descend the line, he fell to his death.
The plaintiffs sued, inter alia, Cell Tech and its insurer, UNIC, in tort, alleging that Conley’s death was the result of work practices substantially certain to result in injury or death. The defendants filed motions for summary judgment on the grounds that the plaintiffs’ exclusive remedy for this employment-related accident was workers’ compensation benefits. The plaintiffs opposed the motions and supported their oppositions with the depositions of various Cell Tech employees.
After reviewing the motions, the trial court denied summary judgment. The trial court found that the accident that killed Conley happened as follows:
IsOn the date of the accident, Conley Temple was attempting to descend from the tower by attaching a line which ran from the ground, looped through a “block” high on the tower, and (sic) come down on the other side. The practice was known as “riding the rope” and involved the use of a “cat head” mounted on the ground which would attach to one end of the line and could be used to “winch down” workers from the top of the tower who had attached themselves to part of the line on the other side of the *1265 tower. In order for the procedure to work, a person on the ground would have to activate the cat head and “winch” the person to the ground. Either the employee attempting to ride the rope or another employee on top of the tower would have to communicate to the person on the ground to activate the cat head. The communication is either done by using radios or by shouting from the top of the tower to the person below.
[[Image here]]
The act of employees “riding the line” is against OSHA regulations.
[[Image here]]
The trial court found that there were unanswered questions of fact, including whether Cell Tech partner Huey Johnson had told employees not to descend towers by “riding the line.” The court concluded that this accident, and the resulting injury, was inevitable. The court further concluded that there was a substantial issue of material fact as to whether the accident was “substantially certain to occur” and thus summary judgment was inappropriate. Defendants/applicants seek review of the trial court’s rulings.
DISCUSSION
In Rodgers v. Food Lion, 32,856 (La. App. 2d Cir.4/5/00), 756 So.2d 624, 626, writ denied, 00-1268 (La.6/16/00), 765 So.2d 339, this court explained the legal standard for the grant of summary judgment.
|4A motion for summary judgment is not to be used as a substitute for trial on the merits.... A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966,.... If the court finds that a genuine issue of material fact indeed exists, summary judgment must be denied.
The burden is on the party seeking summary judgment to establish that there is an absence of factual support for one or more of the essential elements of the adverse party’s claims. If the nonmoving party then fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966; ...
Further, LSA-C.C.P. art. 967 provides that, when a motion for summary judgment is made and supported as provided above, the party opposing summary judgment cannot rest on the mere allegations or denials of his pleadings, but must present specific facts showing that material facts are still at issue. LSA-C.C.P. art. 967. Although the burden of proof remains the same under the recent amendment to LSA-C.C.P. art. 966, summary judgment procedure is now favored to secure the just, speedy and inexpensive determination of all except certain disallowed actions. Act 1996 1st Ex.Sess., No. 9. We review summary judgments de novo under the same criteria that govern the district court’s consideration of the appropriateness of summary judgment.
756 So.2d at 626. (Citations omitted).
Claims for injury or death resulting from a work-related accident are almost always recoverable only through workers’ compensation. LSA.-R.S. 23:1032 provides, in part:
*1266 |BA. (l)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to . compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages ....
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional tort.
Section B, the intentional act exclusion, has been judicially interpreted numerous times. Two recent supreme court cases, Carder v. Grey Wolf Drilling Company, 00-1835 (La.1/17/01), 776 So.2d 439 and Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99), 731 So.2d 208, explain that the exclusion is narrow, and that the Louisiana legislature has rejected amendments to the section that would allow double compensation in cases where an employer violated a safety regulation, failed to provide a required safety device or, through a supervisor, acted with gross negligence. In Reeves the court collected a number of cases and recognized that the courts of appeal “have almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment.” The court recited the following language from Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981):
Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.
The court then explained “substantially certain” as follows:
| ^Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers’ compensation.
The “substantially certainty” element has been explained in this context as follows:
The traditional definition is simply a way of relieving the claimant of the difficulty of trying to establish subjective state of mind (desiring the consequences) if he can show substantial certainty that the consequences will follow the act. The latter takes the case out of the realm of possibility or risk (which are negligence terms), and expresses the concept that an actor with such a certainty cannot be believed if he denies that he knew the consequences would follow. In human experience, we know that specific consequences are substantially certain to follow some acts. If the actor throws a bomb into an office occupied by two persons, but swears that he only “intended” to hurt one of them, we must conclude that he is nonetheless guilty of an intentional tort as to the other, since he knows to a virtual certainty that harmful consequences will follow his conduct, regardless of his subjective desire.
Malone & Johnson, Louisiana Civil Law Treatise, Volume Ik, Workers’ Compensation Law & Practice, § 365, p. 208.
“ Substantially certain to follow requires more than a reasonable probability that an injury will occur and *1267 ‘certain’ has been defined to mean ‘inevitable’ or ‘incapable of failing.’ ” Jasmin v. HNV Cent. Riverfront Corp., 94-1497 (La.App. 4th Cir.8/30/94), 642 So.2d 311, writ denied, 94-2445 (La.12/9/94), 647 So.2d 1110 at 312. “[A]n employer’s mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the ‘substantial certainty’ requirement.” Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1142 (La.App. 4th Cir. 1993), writ denied, 629 So.2d 347 (La.1993). “Further, mere knowledge and ^appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing.” Id. (citing Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806, 807-808 (La.App. 4th Cir.1991)).
We hold that the unanswered questions of fact in this case are not material to the dispute within the meaning of LSA-C.C.P. art. 966(C). Even if Johnson had never told Cell Tech employees to eschew “riding the line” and even if this was, as alleged, a routine practice in the field, this reckless disregard of employee safety, while negligent, does not meet the “substantial certainty” requirement of the intentional act exception to the Workers’ Compensation Act. The facts in Clark v. Division Seven, Inc., 99-3079 (LaApp. 4th Cir.12/20/00), 776 So.2d 1262; Trahan v. Trans-Louisiana Gas Co., Inc., 618 So.2d 30 (L.App. 3rd Cir.1993) and Wainwright v. Moreno’s, Inc., 602 So.2d 734 (La.App. 3rd Cir.1992), share the common theme that injury was immediately foreseeable to the employer and indeed was inevitable. By contrast, the practice of “riding the line,” even if encouraged by Cell Tech, demonstrates at most gross negligence.
CONCLUSION
For the foregoing reasons, the rulings of the district court are reversed, summary judgments are granted in favor of Cell Tech and UNIC and plaintiffs’ petition for damages is dismissed. Appellate costs are assessed against the plaintiffs, Need P. Temple and Saundra H. Temple.
REVERSED AND RENDERED.

. The plaintiffs also sued another company, J & S Communication Contractors, and its insurer, Hermitage Insurance Company. (J & S allegedly exchanged jobs and equipment with Cell Tech).